## McCAW MANUFACTURING COMPANY *v.* FELDER & ROUNTREE.

1. The acceptance of a written proposal to furnish for a given period all of the goods of a specified character which the promisee might "want" does not bind the promisor to furnish or the promisee to order any of the goods so specified.
2. An offer to supply a manufacturer with all of the boxes of a described character "which should be rendered necessary to pack the output of the factory" of the promisee during a specified time, and an acceptance by the latter of such offer, constitutes a contract which binds the promisor to furnish and the promisee to order, during the time specified, all of the boxes necessary to pack the products manufactured by the latter's factory.
3. Although an offer to sell goods is so indefinite as to the quantity of the goods to be sold as not to be capable of enforcement, even after a general accept-

ance of the terms of the offer by the party to whom it is made, yet where the latter, after such an acceptance, actually orders a specified quantity of the goods, which order is accepted by the proposer, he is bound to furnish and the party ordering is bound to accept and pay for all of the goods so ordered.

4. The allegations of the plea in the present case sufficiently set forth, as against a general demurrer, the measure of the damages accruing to the defendant from the failure of the other party to the contract to ship the goods ordered by the defendant under the contract.

Submitted March 1, — Decided April 29, 1902.

Complaint. Before Judge Felton. Bibb superior court. May 15, 1901.

*Hardeman, Davis, Turner & Jones*, for plaintiff in error.
*John R. L. Smith*, contra.

Cobb, J. Felder & Rountree, as transferees of an account in favor of the Georgia Handle Company, brought suit against the Mc-Caw Manufacturing Company. The defendant filed an answer, denying liability on the account sued on, and containing, in substance, the following allegations: The defendant required a large number of wooden boxes to ship its products in. The Georgia Handle Company applied to the defendant to manufacture for it all the boxes that it might need for a period beginning May 1, 1900, and ending May 1, 1901, and after some correspondence a contract was entered into between the two companies for such boxes as defendant might require during such period, and at the prices therein stated. In pursuance of the contract the defendant sent to the Handle Company various orders which were accepted by it, and one of such orders was filled. At the time this order was filled the Handle Company had orders from the defendant for two car-loads of boxes, which orders it failed to fill. The price of boxes having advanced in the meantime, the Handle Company refused to further carry out its contract; and after this company was placed in the hands of a receiver, the receiver failed and refused to carry out the contract, which refusal compelled the defendant to purchase the boxes thereafter to be used at prices in excess of those agreed on in the contract between the two companies. By reason of this breach of contract on the part of the Georgia Handle Company, and by reason of the fact that defendant was compelled to purchase boxes in the market at advanced prices, the defendant has been damaged in a sum far in excess of the plaintiffs' demand, and the amount of this damage should be allowed as a set-off against such demand. Attached

to the plea were a number of letters written by each of the two companies above mentioned to the other. This correspondence began with a letter from the Handle Company in the early part of 1900, stating that the Handle Company was putting in new machinery for the manufacture of boxes and would be glad to submit quotations. After some correspondence had taken place, the Handle Company wrote requesting the defendant to ship it one of each of the different sizes of boxes that the defendant used, in order that the Handle Company might see what printing dies and style of boxes were required. Soon after this letter the defendant wrote the Handle Company that samples of boxes as requested had been forwarded; this letter containing a request that a representative of the Handle Company call upon the writer after having examined the samples of boxes forwarded. Without detailing more at length the nature of the correspondence between the two companies, it finally culminated in a letter from the Handle Company submitting prices on crates and packages practically in accordance with the samples and sizes furnished by the defendant. In this letter prices of some fourteen different sizes of boxes were given; it being stated that the prices were to cover a period of one year, beginning May 1, 1900; and the boxes "were to be delivered in car-load lots as wanted." At the bottom of the letter the following entry appears: "Macon, Ga., Mar. 26th, 1900. Accepted. McCaw Mfg. Co. Geo. T. Kershaw." By an amendment to its answer the defendant set up that it was compelled to purchase the two cars of boxes which the Handle Company failed to furnish, at a price sixty dollars in excess of the price named in the contract. The plaintiffs demurred to the defendant's answer as amended, on the ground that the contract relied on by the defendant was unilateral and wanting in mutuality; that its terms did not impose upon the Georgia Handle Company any obligation to fill any part of the orders sent it by the defendant, nor compel the defendant to give all or any part of its orders to the Handle Company; that it was not binding on one of the parties thereto, and therefore not binding on the other; that it was a nudum pactum, there being no consideration for the same. They demurred on the further ground that the claim attempted to be set off against the plaintiffs' demand, if valid at all, was not a mutual demand but one on behalf of the defendant against the Georgia Handle Company; it was not a debt between the same parties and

in their own right. The court sustained the demurrers and struck the pleas, and to this the defendant excepted.

1. If the alleged contract set forth in the defendant's plea was unilateral and wanting in mutuality, then of course the items of damage set forth in the plea constituted no proper matter of set-off against the plaintiffs' demand. If, on the other hand, the agreement was a binding and enforceable contract, and the defendant has, by reason of the breach of the contract by the Georgia Handle Company, suffered damage, such damage can be properly pleaded as a set-off against the plaintiffs' claim. While as a general rule "set-off must be between the same parties and in their own right" (Civil Code, § 3747), still the transferee of a chose in action other than a negotiable security takes it subject to the equities existing between the original creditor and the debtor. Civil Code, § 3077. Was the contract wanting in mutuality? Or, stated differently, was the Handle Company bound to furnish all the boxes the defendant might use during the year, and was the defendant bound by the terms of the agreement to order all of the boxes it might require in its business during that time from the Handle Company. If either of the parties was not so bound, then neither was. The subject of mutuality of agreements of this character has been many times learnedly and elaborately discussed both by courts and text-writers — so much so that little remains to be said except to apply well-settled rules to the facts of the particular case. The general rule is, that when an offer to sell a quantity of goods at a specified price has been accepted by the person to whom it is made, both parties become bound by the terms of the offer, and neither is at liberty, after such acceptance, to withdraw. *Black* v. *Maddox*, 104 *Ga.* 161. While a promise is a good consideration for a promise, the promise in each instance must be of such a character as to be capable of enforcement against the party making it, as otherwise neither party will be bound. It must be sufficiently definite both as to time and subject-matter. The promise itself, taken in the light of the circumstances, must contain sufficient data to enable it to be enforced. These principles would seem to be almost axiomatic, but great difficulty has been experienced in applying them to particular cases. In the present case the Georgia Handle Company offered to furnish the defendant, at specified prices, all of the boxes of a certain character that it might *want* for a period of one year.

The defendant accepted this offer.   It is very probable that if the defendant, after the reception of the offer, had agreed to purchase a definite number of boxes, the Handle Company would have been bound to furnish them.   But the defendant does not agree to purchase a single box.   It does not agree to *want* any boxes.  It says, in effect, we are pleased with the terms you make; and if we should want any boxes of the character mentioned, we will give you the order.   Of course, as the defendant was in a business which required the use of a large number of boxes of the kind specified in the letter of the Handle Company, the reasonable supposition was that it would want a number of such boxes during the year. But this is not the criterion by which the validity of the contract is to be determined.   Suppose in point of fact the defendant had not wanted any boxes.   Suppose it had ceased to do business during the year, or had sold out its business a short time after the correspondence with the Handle Company and before it had had occasion to use any boxes, could the Handle Company have maintained against it an action for the breach of the contract?   If so, what would have been the measure of its damages?   Where in the letter is the basis for computing damages?   If the defendant went out of business, it would not have wanted any boxes, and consequently would not have been liable for a failure to purchase any. If, on the other hand, it had remained in business, but had found that it had on hand all the boxes that it needed for the year following the contract, it would still not have been liable for the failure to purchase.   And if it had gone into the market and purchased from others boxes to be used in its business, it could have met a demand from the Handle Company for compensation with the reply that it did not want any of the boxes which the Handle Company had agreed to furnish. The defendant was at perfect liberty to change the character of the boxes it might use during the year in size or quality, and the Handle Company would have been absolutely without redress.   The fact that the defendant may have actually remained in business and may have actually used the very character of boxes specified in the Handle Company's proposal, purchasing them in the market from other manufacturers, can not affect the question.   The contract must be construed in the light of the situation of the parties and their circumstances at the time the contract was entered into.   At that time the mere acceptance

of the proposal of the Handle Company constituted no consideration for its promise, and the contract was nudum pactum. "Promises, to constitute a consideration for each other, must be concurrent, or become obligatory at the same time." Clark, Con. 166; *Morrow* v. *Express Co.*, 101 *Ga.* 812; Benj. Sales (Bennett's 7th ed. 1899), § 39. .

The ruling made in the present case finds direct support in the decision of the Supreme Court of Minnesota in the case of Bailey *v.* Austrian, 19 Minn. 535. It was there held that where one person promised to supply another with all the "Lake Superior pig iron wanted by them in their business from Sept. 2 until Dec. 31st next ensuing, at specified prices," and the person to whom the offer was made promised to purchase of the promisor all of such pig iron he might want at the prices named, this did not constitute any valid contract between the parties, being void for want of mutuality. This case was followed in Torbox v. Gotzian, 20 Minn. 139. See also Chicago R. Co. *v.* Jones, 58 Ill. App. 431; Chicago R. Co. *v.* Dane, 43 N. Y. 240. This court in *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810, held the tender and acceptance of a proposition somewhat similar in its nature to the one under consideration in the present case to be wanting in mutuality, though that decision turned to some extent on the fact that the proposal was indefinite as to the time within which it was to remain of force. We are therefore of opinion that the agreement relied on by the defendant in its plea could not operate as a binding and valid contract as to the entire number of boxes which the defendant was compelled to purchase for the period specified in the proposal made by the Georgia Handle Company.

2. The defendant offered an amendment to its plea, setting up that it entered into a parol contemporaneous agreement with the Georgia Handle Company that the quantity of boxes to be furnished under such offer should be the number of boxes which should be rendered necessary to pack the output of the factory of the defendant; that it agreed to accept and the Georgia Handle Company agreed to furnish all of the boxes so rendered necessary to pack such output; and that the agreement was partly performed by the Handle Company's furnishing, under such contract, to defendant one car-load of such boxes, which the defendant accepted and paid for. The plaintiffs objected to the allowance of this amendment, on the

same grounds as those contained in their demurrer to the plea above set forth, as well as on the ground that the contract alleged in the amendment was within the statute of frauds, and that the amendment was an effort to vary an alleged written contract by parol. As the amendment distinctly alleges that the Handle Company partly performed the contract by furnishing a car-load of boxes, and that the defendant partly performed by accepting and paying for such car-load of boxes, this took the contract out of the operation of the statute of frauds. Civil Code, § 2693 (7). As the writing set up in the original plea did not constitute any valid and binding contract between the parties, the objection that the amendment was an effort to vary by parol a written contract is not well taken. We are also of opinion that the contract set forth in the amendment was not wanting in mutuality, but was valid and binding. It is not indispensable in an agreement of this character that the exact quantity of goods to be furnished should be set forth; it is sufficient if enough data be given from which the probable result of a breach can be computed. The defendant company was engaged in a business which required the use of a large number of boxes, and this was known to both parties to the agreement. The Georgia Handle Company was engaged in the manufacture of such boxes. An agreement on its part to furnish all the boxes which should be rendered necessary to pack the output of the factory of the defendant, and a corresponding promise on the part of the defendant to order from the Handle Company all of such boxes, constituted a contract which could be enforced against either party. The promise of the one was a sufficient consideration for the promise of the other. It would perhaps have been impossible for the defendant to specify the exact number of boxes it would require for the period of one year, but it was doubtless well understood by both parties to the agreement what the approximate number would be, based on the number of boxes the defendant had required during a similar period in the past; and the fact that the exact number of boxes was not specified would not render the contract void for want of mutuality. In National Furnace Co. *v.* Mfg. Co., 110 Ill. 427, it was held that a contract whereby one person agreed to furnish to another and the latter agreed to purchase "all the pig iron which he should need, use, or consume in his business" during a given period, was valid and binding on each party. In that case the case of Bailey *v.* Aus-

trian, supra, is distinguished, the court holding that the facts of the Bailey case made it entirely different from the one then being dealt with.   A contract to furnish all the ice a person "might require" for use at his hotel for five years, he agreeing to purchase the same, has been held not to be unilateral.   Smith v. Morse, 20 La. Ann. 220.   In Minnesota Lumber Co. v. Coal Co. (Ill.), 43 N. E. 774, it was held: "Where defendant agreed to buy its 'requirements' of coal of plaintiff, the contract is mutual, as such provision required defendant to buy all its coal from plaintiff, and was one on which plaintiff could maintain an action for breach, should the defendant purchase coal elsewhere."   A contract whereby one agrees to furnish to another and he agrees to buy "all the blankets" of the former's manufacture for a period of three years has been held not to be wanting in mutuality.   Hadden v. Dimick, 31 How. Pr. 196. We are clearly of opinion that the court erred in disallowing the amendment to the defendant's answer.

3. By an amendment to its answer, which was allowed, but which was stricken on demurrer, as set forth in the foregoing statement of facts, the defendant alleged that it had to purchase from others the two car-loads of boxes which the Handle Company failed and refused to furnish, and that the price paid for such boxes was sixty dollars in excess of the contract price with the Handle Company.   It is claimed that this sum is a proper item of damage to be set off against the plaintiff's demand.   A promise, though a mere nudum pactum when made, because the promisee is not bound, may become binding on his afterwards furnishing the consideration contemplated.   *Morrow* v. *Express Co.*, 101 *Ga.* 812. In *Black* v. *Maddox*, 104 *Ga.* 161, Mr. Justice Little points out that though in the case of Cook v. Oxley, 3 T. R. 653, it seems to have been decided that an offer which was intended to be accepted at a future time could not be made the basis of a contract of sale, the doctrine generally recognized is that where an offer sufficiently definite in its nature is made and accepted, a contract exists which can be enforced against either party.   Mr. Clark says: "If, therefore, a person promises to sell such goods as another may order, or to sell land if another shall choose to buy it, and before his offer is withdrawn the other orders goods, or agrees to buy the land, the promisor is bound to sell at the price named."   Clark, Con. 169.   See also Kellar v. Ybarru, 3 Cal. 147.   If within a reasonable time after

the offer of the Handle Company was made, and before it was with-drawn, the defendant notified the company of its acceptance of the terms stated in the offer and actually ordered a specified quantity of boxes, the Handle Company became bound to furnish the quantity of goods ordered, and the defendant became bound to accept and pay for them. The allegations of the plea and the amendment thereto with respect to the two car-loads of boxes bring the case squarely within the rule now generally recognized, that after an offer to sell goods has been accepted, neither party is at liberty to withdraw.

4. It is also argued that the plea was properly stricken, because no special damages were set forth; it being contended that the defendant did not allege the proper measure of damages for a breach of the contract. The allegations of the plea and the amendment, in relation to the damage sustained by reason of the failure of the Handle Company to furnish the two car-loads of boxes which were ordered by the defendant, were sufficient as against a general demurrer. The measure of damages was the difference between the contract. price and the market price on the day of the breach. *Groover* v. *Warfield,* 50 *Ga.* 645 (4). The plea alleges, in effect, that the defendant was compelled to go into the market and buy a number of boxes equal to those which the Handle Company refused to ship, paying for them a price sixty dollars in excess of the price at which that company agreed to furnish them. The plea does not distinctly allege that this was the market price, and had the point been made by special demurrer it might have been well taken, but as against a general demurrer the allegations as to the measure of damages were sufficient.

It results from what has. been said above that there was no error in striking so much of the plea as set up that the written proposal from the Handle Company to the defendant constituted a valid contract to furnish all the boxes the defendant might choose to order during a period of one year; that the court erred in striking that part of the plea which related to the failure of the Handle Company to furnish the two car-loads of boxes which had been ordered by the defendant; and that it also erred in disallowing the amendment to the defendant's plea.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*