### 7641. ELLIS v. DUDLEY, receiver.

The provision of the code of this State that non-negotiable choses in
action are taken "subject to the equities existing between the assignor
and debtor at the time of the assignment, and until notice of the as-
signment is given to the person liable" (Civil Code of 1910, § 3653),
permits the debtor to set up equities subsisting between the original con-
tracting parties, but has no application to equities in favor of the
debtor against an intermediate assignee.

DECIDED MARCH 20, 1917.

Complaint; from city court of Americus—Judge Harper. Jan-
uary 29, 1916.

G. R. Ellis filed a suit against A. W. Smith, as receiver of the
Americus National Bank, returnable to the March term, 1915,
of the city court of Americus, alleging that a receiver was ap-
pointed for the assets of the Americus National Bank on February
3, 1914, at which time J. S. Bolton & Brother, a partnership com-
posed of J. S. Bolton and J. F. Bolton, had on deposit in that
bank, subject to check, the sum of $4,206.72; that there were no
outstanding checks drawn against the deposit, and Bolton &
Brother were not indebted to the bank in any manner whatever at
the time of the appointment of the receiver, and no right of set-off
against them or either of them existed in favor of the bank; that
after the appointment of the receiver, to wit, on March 10, 1914,
Bolton & Brother, for value, sold, conveyed, transferred, and as-
signed the said deposit account to Mrs. Josey V. Warlick, who on
March 27, 1914, sold, transferred, and assigned the same to the
plaintiff; that the plaintiff was at the time of bringing the suit
the owner and holder of the deposit account, and that he was not
indebted to the Americus National Bank in any sum whatever;
that on November 15, 1914, a dividend of ten per cent. that had
been declared was due to be paid to the deposit creditors of the
bank; that the written transfers mentioned had been placed in the
hands of the receiver; that the plaintiff was entitled to have the
said dividend of ten per cent. on the said deposit account, amount-
ing to $420.67, paid to him, and that the said A. W. Smith, as
receiver, refused to pay the same and was therefore indebted to
the plaintiff in said sum, with interest thereon since November
15, 1914, when the dividend became due and payable. Copies of
the transfers referred to were attached to the plaintiff's petition.
The record shows that A. W. Smith died and N. M. Dudley was

appointed receiver of the Americus National Bank and made a party in this cause.

The defendant answered, admitting the appointment of the receiver, but, for want of information, neither admitted nor denied the other allegations of the petition, and demanded proof; and for plea set up that Mrs. Josey V. Warlick, to whom (as appeared from the allegations in the plaintiff's petition) the deposit account of J. S. Bolton & Brother at one time belonged, was at that time largely indebted to the Americus National Bank in a sum greater than the deposit account, and that she was insolvent and unable to pay her indebtedness, and any transfer or assignment by her to the plaintiff was detrimental to the defendant, and was not a legal transfer and assignment as against the rights of the defendant. At the trial of the case the written transfers from Bolton & Brother to Josey V. Warlick, and from her to G. R. Ellis, were introduced in evidence. The plaintiff testified: that before taking the transfer from Mrs. Warlick he had a conference with Mr. Dunbar, who then had charge of the affairs of the Americus National Bank, and was acting as its receiver; that Mr. Dunbar stated that Bolton & Brother had the account with the bank, subject to check, and had assigned it to Mrs. Warlick, and were not indebted to the bank in any manner whatever; that he stated to Dunbar, at the time of inquiring as to whether Bolton & Brother were indebted to the bank, that the inquiry was made for the purpose of knowing whether there was a set-off against the account, as he contemplated trading for it with Mrs. Warlick, and Dunbar replied that there was no set-off against Bolton & Brother. On cross-examination the plaintiff stated that Dunbar did not tell him that Mrs. Warlick was indebted to the bank, and he did not ask him. Counsel for the defendant admitted that three dividends had been paid, —two of ten per cent., and one of five per cent.,—and that one dividend of ten per cent. was paid before the suit was filed and the other dividends since, and that the receiver of the Americus National Bank had refused to pay to the plaintiff any of the dividends on the deposit account of Bolton & Brother. The defendant introduced in evidence, over the objection of counsel for the plaintiff, a promissory note for $6,324, signed by Mrs. Josey V. Warlick, dated August 3, 1913, payable to the order of the Americus National Bank on November 1st after date. No evidence was of-

fered as to the insolvency of the plaintiff's assignor, Mrs. Warlick. The court directed a verdict for the defendant, and the plaintiff made a motion for a new trial, which was overruled, and he excepted.

*Ellis, Webb & Ellis,* for plaintiff.

*W. A. Dodson, Shipp & Sheppard,* for defendant.

JENKINS, J.   (After stating the foregoing facts.)

1.   No equity having existed in favor of the debtor against the original holder of the chose in action, and none being held against the present assignee, the sole question for our determination, therefore, relates to whether or not the defendant bank should have been allowed to set off against the plaintiff its indebtedness against Mrs. Warlick, the intermediate assignee of the bank deposit, and who was the assignor of the plaintiff.   "Set-off is a defense which goes, not to the justice of plaintiff's demand, but sets up a demand against the plaintiff to counterbalance his in whole or in part."   Civil Code of 1910, § 4339.   Ordinarily such a right inures only to the benefit of the parties themselves and in their own right.   Civil Code of 1910, §§ 4340, 4341.   But in section 3653 it is provided that title to non-negotiable choses in action is taken "subject to the equities existing between the assignor and the debtor at the time of the assignment, and until notice of the assignment is given to the person liable," and under the interpretation of this provision of the code by our Supreme Court there can be no question but that it permits the defeat of such an assignee's claim by virtue of equities subsisting between the original contracting parties.   But whether the equities of such debtor against an intermediate assignee can be set off against the final holder seems to be a question which has never been adjudicated by the courts of this State.   So far as our search has enabled us to ascertain, in none of our cases have the facts ever caused the determination of this question to become pertinent.   It is true that our Supreme Court, in the case of *Guerry* v. *Perryman,* 6 *Ga.* 119, 123, uses the following language:   "The rule with regard to the assignment of choses in action, *not negotiable,* we understand to be, that every person who takes an instrument, *not assignable by the terms of it,* must take it principally on the credit of him from whom he receives it, for it is always liable to be defeated by equitable circumstances subsisting between the *original*

*contracting parties,* being· taken legally subject *to all the equities of the original debtor.*" This language was quoted approvingly in the case of *Third National Bank* v. *W. & A. Railroad Co.,* 114 *Ga.* 890 (40 S. E. 1016). In the later case of· *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 408, 411 (41 S. E. 664), our Supreme Court, speaking through Justice Cobb, uses the following language: "While as a general rule 'set-off must be between the same parties and in their own right' (Civil Code [of 1895], § 3747) [Civil Code of 1910, § 4341], still the transferee of a chose in action other than a negotiable security takes it subject to the equities existing between the original creditor and the debtor. Civil Code [of 1895], § 3077." Civil Code of 1910, § 3653. But while the language of these decisions might seem to indicate that the equities which may be set up by the debtor against the final assignee are such only as subsisted between the original contracting parties, still, inasmuch as equities against intermediate assignees were not involved under the facts in any of those cases, we can not hold the language quoted to be conclusive in the determination of the question now before us.

Section 3653 of the Civil Code of 1910, referred to above, is as follows: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." A literal construction of this section might seem to indicate that the final assignee takes such securities subject only to the equities existing between his immediate assignor and the debtor, but such a construction would be directly in conflict with each of the rulings already referred to. The question, therefore, which we are called upon to decide is whether such an assignment is taken subject not only to the right of set-off existing between the present parties, by virtue of § 4340, and subject also to equities existing between the original parties, by virtue of the provisions of § 3653, supra, but whether such an assignment is taken subject also to the equities existing between the debtor and all intermediate assignees, or· at least subject to the equities against the immediate assignor of the holder. In arriving at the true intent of § 3653 it will be observed that while non-negotiable securities are taken subject to the·

equities between "the assignor and debtor," such limitation is expressly made to apply only to such equities against the assignor as existed "at the time of the assignment and until *notice* of the assignment is given to the person liable." We think this provision as to notice can aid in determining the question before us,—that is, whether the words "the assignor" relate only to the original creditor, or whether they are intended to comprehend all intermediate assignees. At common law, such choses in action were not assignable, and the purpose of the law we are considering would seem to have been primarily to render such non-negotiable securities subject to assignment; but at the same time to hold the assignee thereof liable to any then-existing equities against the assignor in favor of the debtor, and further to even hold the assignee subject to subsequently accruing equities against the assignor until notice of the assignment had been given. It can admit of no question that, under the terms of the code provisions, any assignee of such a claim could not be defeated therein by the debtor attempting to set up an equity against his original creditor, if the claim arose subsequently to the notice given him of the assignment. This is true under the plain provisions of the law itself. If, then, the debtor could not be heard to defend in such manner, would the fact that an equity arising after such notice exists against a new and different person than the original holder of the claim alter the rule? We can not think so. The manifest intent of the quoted section seems to be that the notice prescribed is intended to fix the status of all equities, and that, after such notice has been given, any equities subsequently arising are barred. If, then, it be taken as true that no counterclaim in favor of the debtor can arise, after notice to him of the original assignment, the language of the section, wherein it refers to equities existing between the assignor and the debtor "at the time of the assignment and until notice of the assignment is given," would certainly seem to refer to the equities between the original contracting parties. While the suppositions used in the foregoing reasoning may not altogether correspond to the facts in the instant case, they are employed for the purpose of arriving at the correct meaning and intent of the code-section we are seeking to construe; and if the meaning of the section before us has been thus correctly arrived at, then no further difficulty appears in applying its provisions to the present case.

Under the provisions of § 4344, the right of an assignee to set off equities against the original payee of a negotiable paper received under dishonor is applied under a somewhat different rule than the rule applicable where a non-negotiable chose in action is assigned. In cases where an overdue negotiable paper is received, while the right of set-off is allowed against the "original payee" (§ 4344, supra), this right is limited to only such counterclaims as are in some way connected with the contract sued on. While this same distinction seems to obtain in other States as the more general rule, there appears to be considerable lack of uniformity in this respect. 34 Cyc. 749 (6). Thus, when considering those cases in other jurisdictions where the right of set-off against an intermediate assignee is treated, we should bear in mind the distinctions pointed out, whenever the facts of such cases indicate that the attempted set-off was in an action upon a discredited note or bond; still we think that the courts of many jurisdictions have clearly laid down the governing rule, without reference to the special distinctions which we have pointed out in favor of notes and bonds, although taken when past due. The general proposition as stated in 34 Cyc. 748 (5) is as follows: "Defendant can not, as against plaintiff, set off demands against plaintiff's intermediate assignees, unless there is an agreement between the parties allowing it. Thus a set-off against an intermediate assignee held as a general rule to be unavailable in an action on a note, and the same principle is held to be applicable where plaintiff sues upon a bond." See also 25 Am. & Eng. Enc. of Law (2d ed.), 530. In McKenzie v. Hunt, 32 Ala. 494, it was held that in an action on a note by a remote indorseè, against the maker, a set-off against an intermediate indorser is not available. In Maury v. Jeffers, 12 Miss. (4 Smedes & M.) 87, it was held that where the payee of a note assigns it before its maturity, and on its dishonor takes it up and sues the maker, the maker is not entitled to the benefit of a set-off held by him against the assignee. In Blair v. Mathiott, 46 Pa. St. (10 Wright) 262, it was held that "an obligor in a bond can not defalcate, against the assignee of an assignee of a bond, a claim or set-off which he holds against the first assignee." In the opinion in that case it is said: "It seems to me that it would complicate a plain and beneficent principle much, were we to hold, where a bond, without any right of defalcation between the original

parties, is passed by half a dozen transfers, that the final assignee shall have to submit to a settlement of all accounts, great and small, which may have existed between the obligor and each successive assignee. To require inquiries as to the state of accounts between him and such assignees, or in default to have them all defalked as against the ultimate holder, would put an end to the transmission of such choses in action altogether—a thing which the law has no policy in discouraging." In Perry *v.* Mayes, 2 Bailey (S. C.), 354, it was held that in an action on a negotiable note by the indorsee, under an indorsement after maturity, the maker can not set off a demand against an intermediate holder of the note, not the original payee thereof. In Savage *v.* Laclede Bank, 62 Miss. 586, it was held that "Under § 1124 of the Code of 1880, the acceptor, when sued upon a bill of exchange by the last indorsee thereof, can not set off against the same an account acquired against an intermediate indorser while the bill was held by the latter. This statute, which gives the defendant sued upon 'any such assigned bill of exchange the benefit of all set-offs had· against the same previous to notice of the assignment, as though the suit had been brought by the payee,' has reference only to set-offs against the party with whom the defendant dealt."·

A Missouri case very much like the case at bar, and relating to the assignment of a like chose in action, is that of Frowein *v.* Calvird, 75 Mo. App. 567; and as the statute of that State is very simliar to that of our own, we quote from the opinion of the court at some length, because we deem it to be directly pertinent to the case under review. "The admissions of the pleadings in the case are as follows, to wit: 1. That the Denton Brothers had a claim for a call deposit amounting to $215.89 against the insolvent Henry County Bank, of which Calvird & Lewis, the defendants, were the assignees. 2. This claim was assigned to Sarah L. Denton and by the defendants allowed in her name for that amount and a certificate issued to her therefor. 3. That said certificate was for value by her assigned to the Frowein Brothers and was by them assigned for value to plaintiff. 4. That since the last-named assignment the said assignees have declared a dividend of ten per cent. on the hundred dollars, and that the plaintiff has demanded the same, which demand has been refused; that the Frowein Brothers, at the time of the assignment of said certificate to them,

as well as at the time of the assignment thereof by them to the plaintiff, were indebted to said Henry County Bank, and consequently to said assignees, in an amount greatly in excess of that of the said certificate. The court below refused to make an order requiring the said defendants to pay over to plaintiff the said dividend and dismissed her petition. The question thus presented is whether or not the court gave the proper judgment on the pleadings. It will be seen that the defendants have no claim of set-off against the Denton Brothers, the creditor, or against Mrs. Denton, their assignee in whose favor the certificate of allowance was issued. But the right of set-off is asserted against the plaintiff on the ground that the Frowein Brothers, the intermediate assignees, were, whilst such certificate was in their hands, indebted to the defendants in an amount in excess of that of the certificate. The remedy of set-off was unknown to the common law. It is the creature of statute. By the 2d George II, chapter 27, section 13, it was for the first time enacted that where there were mutual debts between the plaintiff and defendant one debt might be set off against the other. And afterward there was a difference of opinion between the King's Bench and the Common Bench as to the setting off of debts of different natures which gave rise to the statute of 8 George II, chapter 24. By the sixth section of this latter statute mutual debts were authorized to be set off against each other, notwithstanding such debts were deemed in law to be of different natures.

"Section 8160 of our statute in relation to set-off is in substance the same as that of the English statute just referred to. It has been held by the English courts that the latter statute applies only when the debts between the plaintiff and defendant were mutual legal debts. Isberg v. Bowden, 22 Eng. L. & Eq. R. 551. Our statute says, 'that where *two or more persons are mutually indebted* . . and one of them commences an action against the other, one debt may be set off against the other;' while the English statute says that 'where there are *mutual debts between plaintiff and defendant*' they may be set against each other. It is plain that the terms employed in the former are of similar import to those employed in the latter. The debts due, to be the subject of set-off, must be mutual between the person who sues and the one sued, or between the plaintiff and defendant. If there is no debt

due from the plaintiff at all, as here, how can the statute apply? It is clear that there is a lack of that mutuality of indebtment between the plaintiff and the defendants which is required to make the statute applicable. But it is contended by the defendants that section 8161, Revised Statutes, which provides, 'in actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or other defense which existed in his favor at the time of being notified of such assignment' confers the right of set-off in a case like the present. In actions on assigned accounts and non-negotiable instruments by whom? Does it mean by any assignee whether the defendant have a claim against him or not? Or does it mean only such an assignee as against whom the defendant has a claim? Or does it mean that where there have been successive assignments and the defendant has a claim against an intermediate assignee, such claim can be set off against that in the hands of the plaintiff, though the latter is not a debtor of the former?.

"In Waterman on Set-Off, section 118, it is stated: 'Although in an action by the assignee of a promissory note against the maker the defendant (the latter) may set off any proper demand which he may have held against the payee, at any time previous to notice of the assignment to the latter, yet this right does not include demands subsisting against intermediate assignees, through whose hands such note or bond may have passed by blank indorsement or otherwise, unless there is an agreement between the parties to that effect, founded on some new consideration.' And this statement of the law is supported by a number of adjudicated cases. Hooper *v.* Spicer, 2 Swan's R. 494.; Kennedy *v.* Manship, 1 Ala. 43; Stocking *v.* Toulmin, 3 Stew. & Port. 35; Blair *v.* Hathiott, 46 Pa. St. 262; Downey *v.* Thorp, 63 Pa. St. 322. While Harris *v.* Burwell, 65 N. C. 584, at first glance would seem out of line with the cases last cited, yet when the facts of the case and the terms of the statute which influenced the decision therein are considered it will be found not to be so. Applying the foregoing rule to the present case, it is clear that the defendants can not set off the plaintiff's claim with that held by them against the Frowein Brothers, the intermediate assignee, through whose hands the plaintiff's demand passed by indorsement.

"In an action on assigned account or non-negotiable note a set-

off could not be allowed but for the provisions of section 8161. Under the English statute and our section 8160, unless there be a mutual indebtedness, the right of set-off can have no existence. But section 8161 is a qualification of section 8160. Keeping in mind the provisions of the latter section, it will be seen that what is meant by the former is that where one of two mutually indebted parties is sued by the assignee of the other, he shall be allowed every just set-off that he had against the other at the time of the notice of the assignment. The latter of these sections places the assignee and the defendant on the same footing that the assignor and the defendant occupied under the former. But if the first assignee does not sue, but passes the claim by assignment to a second assignee, and the latter sues thereon, then the defendant will not be permitted to set off plaintiff's claim with that he has on the intermediate assignee. The defendant's right of set-off against a claim is recognized by the statute to exist between himself and the other party, between whom and himself there was a mutual indebtedness, and between himself and the assignee of the latter. The statute does not go beyond this. As has been already stated, the right is not a creation of the common law, but of the statute, and if it does not exist under the statute it does not exist at all."

If it be true that while the deposit was owned by Mrs. Warlick the bank had the right to apply it in extinguishment of its matured debt against her (7 Corpus Juris, 653, § 352; *Bank of Lawrenceville* v. *Rockmore,* 129 *Ga.* 582, 59 S. E. 292; *Luthersville Banking Co.* v. *Hopkins,* 12 *Ga. App.* 488, 77 S. E. 589; *Milhouse* v. *Citizens Bank of Valdosta,* 14 *Ga. App.* 240, 80 S. E. 703), it nevertheless failed or refused so to do, and, under the view we have taken, it should not be allowed to set up such claim against a subsequent holder for value.

We are led to believe that the conclusion we have arrived at is sound, so far as the facts of this particular case go, for the additional reason that under the ruling made in *Nix* v. *Ellis,* 118 *Ga.* 345 (45 S. E. 404, 98 Am. St. R. 111), Mrs. Warlick could not herself have set off the deposit assigned to her as against her indebtedness due the bank; and, as we deem the right to the defense of set-off to be a mutual one, neither could the bank have set off its claim in an action by her on the indebtedness due by it. In

the *Nix* case, supra, it was held that, while one indebted to a bank may ordinarily purchase a claim due by it, and use the same as a set-off, when subsequently sued on a debt due the bank, yet, where the bank becomes insolvent, such a right continues only up to the time of the filing of the petition for the appointment of a receiver, and that the receiver of the bank takes its choses in action in the same plight in which they existed at that time.

It is our opinion that the court erred in allowing the bank to prove its claim against Mrs. Warlick, the intermediate assignee, in defeat of the plaintiff's action.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*