27433. GEORGIA WHOLESALE COMPANY *v.* DOWNS.

442

DECIDED JUNE 22, 1939. REHEARING DENIED JULY 26, 1939.

Jones, Powers & Williams, for plaintiff in error.

Arnold, Gambrell & Arnold, Joel B. Mallet, contra.

GUERRY, J. Mrs. F. K. P. Downs, as transferee and assignee for value of the claim of her husband, H. S. Downs, brought suit against Georgia Wholesale Company. The petition alleged that on January 20, 1922, H. S. Downs entered into a verbal contract with the authorized officer of the defendant to open and operate for it in the City of Atlanta a certain store for the sale of surplus army goods; that at that time the defendant had entered into contracts with the United States government for the purchase from it "of various supplies and clothing, including shoes, which the United States of America had provided and accumulated for the use of its soldiers and its army in the World War, the originals and copies of which contracts are in the exclusive custody and control of the defendant company and the government, and that, in order to promote the sale of these supplies it had contracted to buy from the government, the defendant entered into this verbal contract with plaintiff's husband for him to operate this store in Atlanta for the sale and disposal of these goods, and under the terms of this agreement "H. S. Downs was to receive at the *end* of all operations of said company under said contracts with the United States of America as above mentioned, one third of the profits of said branch, and that in compliance with said agreement" Downs did open and operate said branch in the City of Atlanta, "and as a result of his said operation, which began at that time and ended January 17, 1924, upon an accounting had, it was agreed that Downs had earned $10,000, but only $8608.99 was to be paid at all events and $1391.01 additional was to be paid" if said defendant

did make a profit on the army shoes. The petition alleged further that the operations of said company with the government ended December 7, 1936, and the full amount of $10,000 became due at that time, for the reason that a profit in excess of that amount had been made. A written memorandum was attached, dated January 17, 1924, as follows:

"Carmichael gvt. goods upset credit to H.S.D. 12/31/22, $8,608.99
Car gvt. goods period 1/23 to 2/23 (P) $7810.52

| | |
|---|---:|
| Georgia Wholesale Co. period 2/23 to 12/23 (L) | $16,638.99 |
| Georgia Wholesale Co. period 12/23 to 1/13/25 (L) | 4,523.67 |
| | 21,162.66 |
| Less (P) car gvt. goods 1/23 to 2/23 | 7,810.52 |
| Net loss, from 1/23 to 1/13/25 | $13,352.14 |

1/17/24.

Memo for Mr. Downs [written in ink]:

The above $8608.99 to be credited to H. S. Downs on Ga. Who. Co. Books. If we make profit on the army shoes he is to receive $1391.01 additional at the end of our operations.

                    [Signed] F. S. Carmichael."

The petition alleged further that the operations between Georgia Wholesale Company and the United States Government ended December 7, 1936, "when the said defendant company in the court of claims of the United States was awarded the sum of $492,316.65, or some other large sum, in its suit against the United States of America before said court upon a claim under the contract of said defendant company for the purchase of army shoes from the United States of America", which sum was paid to the defendant. The defendant demurred to the petition on the ground that under the facts as alleged the action was barred by the statute of limitations.

That part of the petition which alleged that the defendant had entered into contracts with the United States government and that H. S. Downs was to be paid his part of the profits at the end of all of the defendant's operations "under said contract with the United States government" was specially demurred to on the ground that said allegations were too vague, uncertain, and indefinite, it not appearing what said contracts were, or when they were to terminate, or when said contracts actually terminated, or what was

the understanding at that time between Downs and the defendant as to when they were to terminate, it merely being alleged elsewhere that the United States government breached said contracts and it not being alleged when said breach occurred.

We think if the contracts between the government and Georgia Wholesale Company made before January 22, 1922, had a definite time in which they were to end that a valid agreement might be made between Downs and the defendant whereby payment to be made Downs for his services was not to become due until the end of such contracts then in existence between the defendant and the government. The petition alleged that such was the contract between Downs and the defendant, and the statute of limitations did not therefore begin to run until the end of such contract. There was no error in overruling the general demurrer as to the statute of limitations. If these contracts had no time in which to end, and might operate indefinitely at the will of the parties, a person who had performed services for the defendant and who was to be paid at the end of the contracts to which he was not a party, was entitled to have his pay at the end of a reasonable time, otherwise he might never be paid for the reason that such contracts might continue indefinitely.

The special demurrers called for allegations as to when these contracts were expected to end. In view of the position we take in respect to the evidence submitted, it becomes unnecessary to pass on the ruling on such demurrers.

Under the pleadings it is apparent that under the contract entered into January 20, 1922, Downs was to be paid for his services at the termination of the contracts which were *then in existence* between the government and the defendant. The evidence for the plaintiff shows that Downs entered upon the performance of his contract and opened and operated the store in the City of Atlanta, and whatever amount he earned according to the terms of this contract was due at the end of his services to the defendant and became barred within four years thereafter unless there was an express agreement to the contrary. The petition alleged, and the evidence was sufficient to warrant a finding, that this amount so earned was not to be paid until the contracts between the defendant and the government which were *in existence January 20, 1922,* were at an end. The petition alleged that these contracts did not come

to an end until December 7, 1936. It appears from the allegations and the evidence that the defendant recovered in the court of claims from the government a large sum on this date. The record of these proceedings introduced in evidence showed, however, that the basis of the claim or contract on which the defendant recovered from the government was the breach of a contract not made until some time in 1930, which was five years after Downs had severed his connection with the defendant and after the amounts he claims had been earned. Construed in its most favorable light, this record may show that this contract made in 1930 on which the defendant recovered in the court of claims was sufficient to prove that the contract made in 1930 was a renewal of a contract made in 1926, which was in turn a renewal of a contract made in June, 1923. It nowhere appears that any of the contracts made in 1923, 1926, or in 1930, had any relation to contracts which were in existence in 1922. It is apparent that the contract sued on, which was entered into on January 20, 1922, did not contemplate, nor is it alleged that it did contemplate, that Downs was not to be paid for his services which he was to render until all contracts which were then in existence between the defendant company and the government and *all contracts which might thereafter come into existence between the defendant and the government might come to an end.* The evidence introduced failed to show that the contracts between the defendant and the government in existence in 1922 were not at an end, or if they had ended, when they ended. The evidence on this point relates to contracts which did not come into existence until long after the making of the contract between Downs and the defendant. If the original contracts between the government and the defendant had not come to an end, no recovery may be had. If they had come to an end, the time was not shown. The plaintiff relied on proof that a different contract from that alleged had come to an end. For that reason the verdict was not supported.

We think the evidence failed to support the verdict for another reason. The only written memorandum in the entire case is that set out in the pleadings. The evidence shows that Downs discontinued his services sometime in 1925 and that he kept this memorandum and in 1938, for a valuable consideration, transferred and assigned it to his wife who brings this action. All the members of the defendant corporation who were living at the time of making the verbal contracts are now dead.

The petition alleged that Downs was to be paid one third of the net profits of the store he operated in Atlanta, Georgia, for defendant, said profits to be determined at the end of the operations of said store. The petition alleged that said operations of said store ended January 27, 1924. Without a full accounting for all the time the store operated there can be no definite determination of the fact as to whether such store operated at a profit or loss. The petition alleged a definite time and amount; the proof is not definite as to this feature. The written memorandum relied on showed that at the end of the first year's operations in 1922 Downs was entitled to an upset credit on the contract of $8608.99. This memorandum is subject to the interpretation that it means that Downs's part, one third of the profits of the entire store for that year, was that amount. Under his contract as alleged he was not to be paid anything until the end of the operations of that store, and it was to be determined at that time whether there was a net profit or not. The fact that this sum had been earned the first year was to be taken into consideration in a final accounting. The memorandum further showed that the store made a profit in January, 1923, of $7810.52, but that during the remainder of that year it showed a loss of $16,638.99, and during 1924 and until January 13, 1925, it showed a further loss of $4523.67. The sum of these two amounts less the profit made in January, 1923, showed a net loss in the operations of the store from January 1, 1923, to January 13, 1925, of $13,352.14.

It would therefore appear that Downs was to be charged for his one third of this loss in the operations of the store, and this amount was to be deducted from any credit theretofore given him. The petition alleged that the operations of the store ended January 17, 1924. We may say that the evidence would have authorized the jury to find that the date "1/17/24" on the memorandum was error and that "1/17/25" was really correct. Even though this is conceded, the testimony of Downs fails to show, as the petition alleged, that the operations of the store ended on that date. It will be noted that the memorandum only brings the operation of the store up to January 13, 1925. In testifying about this feature Downs said: "It continued to operate until after this memorandum was given to me. . . I don't think we had closed our branch store when this paper was given me but we were in the process of closing out the Atlanta

branch when this paper was given me. I am quite sure the paper was given me before the store was closed. . . When the handwriting was put on there I had not closed the Atlanta store. It was put on there not a great while before the Atlanta store was closed, but I don't think it was a year, and the store was closed after the spring following the written memorandum. . . We didn't operate a great while in Atlanta after this was signed but we came back to Jackson a short while after this written memorandum was put on." Irrespective of the question as to whether the word "our" as used in the memorandum referred to the defendant and Downs or to the defendant and the government, the evidence failed to show what would have been the amount of profit or loss at the end of the operations of the Atlanta store, and failed to show absolutely whether there was a profit or a loss for the entire period. The memorandum, which goes no further than January 13, 1925, may show that Downs was entitled, if the store closed on that date, to a profit. The petition alleged that the store closed January 17. The evidence of Downs himself showed that it operated for some time after the memorandum was signed. Therefore, there was no evidence by which the jury could determine whether there was a profit or a loss at the time the store closed, and what was the amount of such profit or loss. A verdict which is predicated on a claim which is to be determined by an accounting at a certain time can not be sustained by evidence alone which shows an accounting up to a date previous to the time alleged.

The evidence failed to show when the contracts between the government and the defendant which were in existence in January, 1922, ended. If they ended when the Atlanta store, where the plaintiff made his alleged earnings, closed, plaintiff's claim was barred by the statute. The evidence failed to support the allegations that these contracts ended in December, 1936. Under the evidence the contracts under which the defendant company recovered from the government were not in existence in 1922. The evidence also failed to show the amount of the alleged profit at the time the Atlanta store closed, or whether there was a profit or loss. The court erred in overruling the motion for new trial.

*Judgment reversed. MacIntyre and Felton, JJ., concur.*

### ON MOTION FOR REHEARING.

Guerry, J. In view of the contentions made in the motion for

rehearing and in order to make clear any seeming ambiguity we make this addition to the opinion:

We sustain the overruling of the general demurrer on the theory that the petition alleged that Downs was to be paid when the contracts which were then in existence between the government and Georgia Wholesale Company came to an end. The petition alleged that these contracts were in the possession of the defendant. If it could be implied from the allegations of the petition that the operations between the government and the defendant referred to in the petition meant contracts then in existence, and any other contracts that might be entered into at some future time, and which might or might not terminate except at the will of other parties, we would hold that it was error to overrule the general demurrer. If the petition is subject to such construction, the general demurrer should have been sustained. The evidence for the plaintiff, as pointed out in the motion, was that Downs contended in his testimony that his contract made in 1922 referred to contracts then in existence and to any other contracts which might thereafter come into existence. If such be the facts, the claim is barred for the reason that the evidence showed that his services with the defendant company ended sometime in 1925, and he was entitled to be paid within a reasonable time thereafter. The defendant could not have then prevented the collection of any amount it might have owed Downs because of services performed on the ground that it had made or might continue to make with the government additional contracts in which Downs had no interest or concern. If such suit had been brought within a reasonable time after such services were performed, Downs would have been entitled to recover the amount earned. A delay of eleven or twelve years will bar an action when it appears that the contracts intended to toll the statute are contracts which the plaintiff has no interest in or control over, and which are dependent entirely on the will of the defendant and third parties.

All contracts to be binding must have the quality of mutuality. *Jernigan, Lawrence & Co.* v. *Wimberly*, 1 *Ga.* 220, *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810 (28 S. E. 998); *McCaw Manufacturing Co.* v. *Felder*, 115 *Ga.* 408, 413 (41 S. E. 664); 3 Michie's Digest, 453. By performing his part of the contract Downs created an obligation to pay on the part of the defendant, and the contract became enforceable. In 12 Am. Jur. 560, § 68, it is said: "How-

449

ever, where the duration of the performance of a promise is left to be determined by the promisor, the promise is too indefinite to create a legal obligation." For further citation of authorities on this point see Hughes *v.* McEwen, 112 Miss. 35 (72 So. 848, L. R. A. 1917B, 1048). As alleged in the petition in this case the contract fixed the time for the payment of the services to be performed by Downs at the time the contracts then in existence between the government and the defendant came to an end. As pointed out by the movant, the evidence introduced showed that the contract, as made, fixing the time for the payment to Downs for his services, "covered present contracts and anticipated contracts," or any contracts then in existence, or any contracts that the defendant might thereafter see fit to make with the government, irrespective of the time. If such was the agreement between Downs and the defendant, the time of his payment for his services was dependent entirely on the will of the promisor, the defendant, and the contract as made was lacking in mutuality. Downs, having performed his contract and having earned the amount promised to be paid him for his services, was entitled to pay therefor at the completion of his services or within a reasonable time thereafter. Twelve years having elapsed between the time he performed the services and the time of the bringing of the action, the claim is barred by the statute. An amendment making the allegations of the petition conform to the testimony of Downs, would subject such petition to a general demurrer on the ground that it showed on its face that it was barred by the statute of limitations. *MacIntyre and Felton, JJ., concur.*