## FLOYD *v.* KICKLIGHTER *et al.*

1. An equitable petition alleged in part as follows: Plaintiff and defendant entered into "a partnership agreement" for the purpose of buying and selling a certain tract of land. Defendant represented that he had an option upon the land, or could buy it, the purchase-price being approximately $15,000. He agreed to endeavor to perfect the option and to use his time and efforts-therefor, and to sell the property for a greater price, there being a purchaser to whom it was contemplated it could be thus sold. Plaintiff agreed to advance the purchase-price, namely, $15,000, or such sum as might be necessary for that purpose. When the property should be sold, the proceeds were to go first for the repayment of the purchase-price advanced and all expenses incurred in connection with the purchase and sale, and the remainder was to be divided equally between the two parties. They were to be jointly liable for expenditures; and whatever expense was incurred by the defendant in connection with the purchase and sale, and likewise interest on the sum advanced by the plaintiff, or used in the purchase of the property, for the time it was actually used for the benefit of the parties, was to be charged against their joint account. The plaintiff was to render such assistance as he might be able to do in perfecting the transaction, and the defendant agreed to conduct all negotiations for the purchase and resale. *Held*, that such allegations sufficiently stated a case of partnership to withstand a general demurrer.

2. If a contract forming a partnership specifies no time for its commencement, it commences immediately.

3. A contract of the character described in the first headnote was not invalid for want of mutuality.

4. If two persons form a partnership for the purpose of buying and selling a particular tract of land which it is estimated will cost $15,000, and one of them agrees to furnish that sum or the amount necessary to effectuate the purchase, such an agreement is not invalid on the ground of indefiniteness as to the amount which may be necessary for such purpose.

5. The petition was not subject to general demurrer.

DECEMBER 12, 1912.

Equitable petition. Before Judge Bell. Fulton superior court. October 21, 1911.

James S. Floyd filed a petition against H. K. Kicklighter and others, seeking, among other things, the dissolution of an alleged partnership, and the recovery of a judgment against Kicklighter for one half of the profits of the partnership. The presiding judge dismissed the case on general demurrer, and the plaintiff excepted. The petition as amended alleged, among other things, the following: About March 1st, 1910, plaintiff and Kicklighter "entered a partnership agreement under and by virtue of the terms whereof the parties agreed as follows:" Kicklighter claimed to have an option or that he could purchase certain property known as the Turner property, containing seventy-two acres, more or less, the purchase-price of said property to be approximately $15,000, "said Kicklighter agreeing to endeavor to perfect said option and right of purchase, use his time and efforts therefor, and, when said property was purchased, to endeavor to sell the same at a greater price than that which was to be paid for said property, that is to say, at a profit. Petitioner herein agreed to finance the proposition, that is to say, he agreed to advance the purchase-price of said property, to wit, $15,000, or such other sum as might be necessary to purchase the same, and when said property was resold or should be resold the proceeds should go first for the payment of said $15,000, or the purchase-price and all expenses incurred in connection with the purchase and sale of the same, and the remainder thereof to be divided, share and share alike, between defendant and said Kicklighter. That said Kicklighter represented and claimed and stated at said time that he could dispose of said property to the United States Government for $25,000. It was also agreed and understood that the parties were to be jointly liable for the expenditures in connection with the purchase and sale of said property, and that whatever expense was incurred by Kicklighter in connection with the purchase and sale of said property should be charged against the joint account of the said parties, and likewise interest, without specifying the per cent. per annum, should be charged to their joint account and paid to plaintiff on whatever amount or sum of cash plaintiff advanced or was used in the purchase of said property for the time said money was actually being used for the benefit of said parties. Petitioner shows that said

agreement was consummated, and that as a part of said partnership agreement he agreed to advance the sum herein specified, to render such assistance as he might be able in perfecting said deal, and, on the other hand, the said Kicklighter agreeing to conduct all negotiations for the purchase and resale of said property."

The plaintiff arranged for the money which he was to advance. From time to time he made inquiries of Kicklighter as to the status of the transaction, and the latter by his "acts and words" led the plaintiff to believe that he was continuing to negotiate for the purchase of the land. Finally, hearing from indirect sources that the trade was being consummated, plaintiff again approached Kicklighter to ascertain the status of affairs, and was told by Kicklighter that he did not intend to recognize the plaintiff as being entitled to any of the profits in the transaction, and that he would refuse to pay any to the plaintiff, and said that he might take such action as he saw proper. In fact Kicklighter made some arrangement with another person to procure the money, the details of which the plaintiff does not know. Kicklighter bought the land and sold it to the same purchaser contemplated in the agreement between plaintiff and defendant, at a profit of $10,000. The purchaser was the Federal government, and its agent has not yet paid over the purchase-price. Kicklighter and the other person with whom he negotiated for the loan of money were made parties; and it was prayed, that such third party be allowed to set up any bona fide claim he might have to any part of the purchase-price; that the partnership between plaintiff and Kicklighter be dissolved; that an accounting be had; that plaintiff have a judgment against Kicklighter for $5,000; that an injunction be granted; that a receiver be appointed to hold the purchase-money; and for general relief and process.

*Moore & Pomeroy,* for plaintiff.

*John L. Hopkins & Sons,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. Frequent efforts have been made to formulate a definition of partnership, which would be at once brief and comprehensive; but owing to the great variety of partnership agreements, this has been found difficult, if not impossible. Lord Lindley has collected, discussed, and criticised a number of them. Lindley on Partnership (7th ed.), 10 et seq. His criticism on some of them

has in turn been criticised by Mr. Clement Bates. 1 Bates on Partnership, § 1. A definition which has been often quoted in this country is that contained in Story on Partnership (7th ed.), § 2, as follows: "Partnership, often called copartnership, is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them." It has been said, however, that partnership is not strictly the contract itself, but the relation arising from the contract.

Many efforts have been made to declare some test or tests which could be applied to the determination of whether a partnership existed or not. But, as in the effort to define a partnership, the result has not been entirely satisfactory. Certain indicia of the existence of a partnership or its non-existence have been found, but the ingenuity and variety of agreements of contracting parties have made it difficult to provide an invariable test, especially as between the parties themselves. In earlier English cases an agreement to share net profits, as such, was said to make the contracting parties partners as to third persons, though not necessarily so inter se. But various exceptions arose, such as measuring the compensation of a mere agent or employee by a sum equal to a share in the profits (which readily drifted into the less exact form of agreeing to pay him for his services with a given share in the profits, though he had no interest therein or control thereof as owner), agreements as to voyages, tenants in common, etc. So a suggestion of mutual agency as a test has been met with the criticism, that if there is a partnership, mutual agency results, but may be regulated and controlled, as between the partners themselves, by agreement; that this is not properly a test, and that in such cases agency is deduced from partnership, rather than partnership from agency. Still it is an incident or indicium pointing toward partnership.

In 1860 the decision of the House of Lords in Cox *v.* Hickman (8 H. L. Cas. 268) brought about a great change in the view previously entertained, made the determination of whether a partnership existed as to third parties (except where there was an estoppel by the holding out of one to the world as a partner) very similar to the determination of the same question between the

parties, and dealt largely with the question of mutual agency and the real contract and intent as important tests. Even in that case and others following it, however, it was recognized that participation in net profits furnished a cogent, and sometimes a conclusive, evidence of a partnership. There too the agreement under consideration arose from the effort of creditors to obtain payment of debts due to them. In this State the common law was adopted as it existed long before the decision in Cox v. Hickman, supra. By section 3158 of the Civil Code it is declared: "A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in profits alone does not."

In the present case we are not dealing with what would constitute a partnership as to third persons, but between the parties themselves. The two things are not identical in this State. But the former casts light upon the latter, because if persons are not partners as to third parties, they can not well be partners between themselves; and the discussions of what is a partnership, what are its incidents, and what are types of partnership agreements in cases arising between alleged partners and third parties often throw light upon the views of the court announcing them in regard to contracts which would constitute persons partners inter se. Still the test of partnership is not exactly the same. By section 3155 of the Civil Code it is declared that "A partnership may be created either by written or parol contract, or may arise from a joint ownership, use, and enjoyment of the profits of undivided property, real or personal." This statement is not exhaustive of what may create a partnership inter se. Nor does the code seem to have intended to change the rule previously announced. *Powell* v. *Moore, Marsh & Co.*, 79 *Ga.* 528, 529 (4 S. E. 383). Section 3156 declares: "As among partners, the extent of the partnership is determined by the contract and their several interests. As to third persons, all are liable, not only to the extent of their interest in the partnership property, but also to the whole extent of their separate property." In *Huggins* v. *Huggins,* 117 *Ga.* 151, 153-157 (43 S. E. 759), these sections of the code are discussed. On page 157 it is said that "A joint interest in profits and losses is generally indicative of a partnership inter se, but not necessarily so; and therefore the law will not from this fact alone infer a part-

nership between the parties." The learned Justice who wrote the opinion probably meant, by the last clause of the sentence quoted, that from a joint interest in profits and losses alone the law would not conclusively infer a partnership between the parties. He could hardly have meant that such joint interest was generally indicative of a partnership, but that proof of an agreement for such joint interest in the profits and losses of a business would not authorize a finding that a partnership existed, if nothing else appeared. In 22 Am. & Eng. Enc. Law (2d ed.), 40, it is said: "An agreement to share both the profits and the losses or expenses of a business has been held in some cases to be conclusive evidence of a partnership; and certainly where such an agreement has been proved, the parties have usually been held to be partners, many cases referring to such a contract as the test of partnership or the type of a partnership agreement. Under the old doctrine [i. e. before the decision in Cox v. Hickman] it was, of course, conclusive of liability as a partner to third parties. But an agreement to share profits and losses does not absolutely, and as a matter of law, create a partnership; and if other circumstances in the transaction show that the parties did not intend (in the legal sense heretofore explained) to create a partnership, none is created. The true rule is that such an agreement is merely prima facie evidence of a partnership." Numerous cases are cited in support of the text.

It has often been declared that a partnership is created inter se only where the parties so intend. But, broadly stated, this expression may be misleading. "The intent which is controlling is the intent to contract for those things which the law declares constitute a partnership. If the parties intend to enter into such a contract and actually do so, they will be partners although they may have intended to avoid this consequence or may even have expressly stipulated that they are not to be partners." 22 Am. & Eng. Enc. Law (2d ed.), p. 26, and citations; 1 Bates on Partnership, § 17. A partnership may be created for a single venture or enterprise. 30 Cyc. 372; Hill v. Sheibley, 68 Ga. 556; Solomon v. Solomon, 2 Ga. 18. Partners may jointly own the capital stock; but this is not essential to the existence of a partnership. One may furnish all the capital, and the other furnish his skill and labor, and they may nevertheless be partners, the two sharing the expenses and the profits and losses of the business. Joint owner-

ship of the capital is a strong circumstance tending to prove the existence of a partnership, but its absence is not conclusive proof that there is no partnership. Smith *v.* Watson, 2 B. & C. 401 (9 E. C. L. 122) ; McDonnell *v.* Battle House Co., 67 Ala. 90 (42 Am. R. 99) ; Champion *v.* Bostwick, 18 Wend. (N. Y.) 175 (31 Am. D. 376) ; Brigham *v.* Dana, 29 Vt. 1.

It is sometimes difficult to determine whether a loan or advance of money for the use of which the lender is to have interest and also a share in the profits, or a share in the profits in lieu of interest, creates the relation of partners, or that of debtor and creditor. In some of the cases the fact that a stipulation for the payment of a share in profits in addition to lawful interest would constitute usury, if treated as a loan, and would therefore be illegal, seems to have had an influence in causing a holding that, under the particular facts of such cases, there was a partnership. But this is not a fair test. If persons contract for usury, they must take the consequences; and the courts can not relieve them from the results of their contract by creating for them a partnership, if they created none for themselves. It is unnecessary to cite and discuss the numerous cases bearing on this subject. In some cases it has been declared that if nothing appears but the furnishing of money by one of the parties and a sharing in the profits by both, a partnership may be presumed or inferred. But the point on which the decisions as to whether a certain advance, with a sharing in profits in lieu of interest or in addition thereto, constituted a partnership inter se, or created the relation of debtor and creditor, has most often rested has been whether the alleged loan was to be repaid at all events, or whether it was risked in the business or to be repaid only from it, and was subject to be lost in whole or in part according to the results of the business or transaction. 22 Am. & Eng. Enc. Law (2d ed.), 34. It has, however, been said that if one loans money to another, without creating any joint ownership in profits as such, he does not cease to be a creditor, although he agrees that his debtor shall pay him out of the proceeds of certain property.

In Tyler *v.* Waddingham, 58 Conn. 375 (20 Atl. 335, 8 L. R. A. 657), it was said that a partnership is created by an agreement under which one person advances money to another for investment in land on their joint account, the profits to be shared between

them in a certain proportion. In Corey v. Caldwell, 86 Mich. 570 (49 N. W. 611), where one furnished money for the purchase of pine lands, and was to be reimbursed with eight per cent. interest, and another was to manufacture the timber, lumber, and shingles, and sell them, as well as the land itself, and out of the proceeds pay back the money, with interest, and any balance, after paying all expenses of manufacture and sale, was to be equally divided between them, it was held that this created a partnership inter se. On the other hand, where money was loaned by one to another, and the latter agreed to invest the amount advanced to him in certain land, to repay the money with lawful interest, and to divide equally between them the profits realized from the lands, the contract being that the money should be repaid at all events, and the additional agreement for a division of the profits being a further compensation for the loan of the money, it was held that this did not constitute the parties partners inter se, but created the relation of debtor and creditor. Smith v. Garth, 32 Ala. 368. These cases are types of the two classes of decisions on the subject mentioned above. In Norton v. Brink, 75 Neb. 566 (106 N. W. 668, 110 N. W. 669, 7 L. R. A. (N. S.) 945, 121 Am. St. R. 822), cited by counsel for defendant in error, there was a parol agreement between two persons to purchase a single tract of land together, one of them taking the legal title in his name, and the other agreeing that he would, upon demand, reimburse the former for one half of the purchase-price, with interest at six per cent. per annum. It will be seen that this was really an agreement on the part of one person to buy the land and sell an interest in it to the other, and that the payment by the latter was to be made at all events, with interest. It was held that this did not constitute a partnership in law, although it was referred to in the plaintiff's petition as an agreement to purchase land "in partnership." Such a contract was declared to be within the statute of frauds. In the case before us one ground of demurrer set up the statute of frauds, but it was expressly abandoned in the brief of counsel for defendants in error.

In the light of these principles, how stands the case under consideration? It was alleged, that the two parties entered into a contract which the plaintiff termed "a partnership agreement." This characterization would not establish a partnership, if the

facts alleged did not make one. But it was alleged, in effect, that the two parties joined in a common enterprise, by which a tract of land was to be acquired and resold, with the anticipation of making a net profit; that one party had an option on the land, but no money, and the other had the ability to procure money; that the latter was to advance the purchase-price, and the former was to endeavor to perfect the purchase and to sell the land at a profit; that the two were to be jointly liable for expenditures in connection with the purchase and sale; that the holder of the option was to conduct all negotiations for the purchase and resale, and the person agreeing to furnish the money was to render such assistance as he might be able in effectuating the common purpose; that any expense incurred in connection with the purchase and sale and interest on the amount advanced should be charged to the joint account of the two parties; and that, when the property should be resold, the proceeds should be applied first for the payment of expenses and the amount advanced, and the remainder should be equally divided between the two parties. We think the allegations of the petition are sufficient to show at least prima facie the creation of a partnership, and to withstand a general demurrer. They show a joint enterprise, a joint risk, a joint sharing of expenses, and a joint interest in profits and losses. They do not show that the plaintiff was to lend the money to Kicklighter, or that it was to be repaid to the plaintiff at all events, or that any note or security was to be given to him beyond the agreement that he was to be repaid from the proceeds arising from a sale of the land. It does not appear that the advance was to Kicklighter alone, but rather to both Kicklighter and Floyd, and the interest was to be charged on their joint account. There is no specific allegation as to how the title was to be taken. But the absence of such an allegation would not destroy the character of the agreement as creating a partnership.

2. It was contended that, at most, the contract was only an agreement to form a partnership in the future, and not an actual formation of one. A contract may be made for the creation of a partnership at some time in the future, or upon the happening of some event, or upon some condition. In such a case no present partnership exists; and while for the violation of such an agreement a right of action might arise, there would be no right to

have an accounting as between actual partners. In the present case there was no allegation that a partnership should be created at some future time, or upon the happening of some event. The alleged agreement provided for action to be taken in the future, but that is true of many partnerships, which are formed in the present for the purpose of establishing and conducting business afterward. The distinction between an agreement to create a partnership in the future, and its creation in the present, with an agreement for the partners to afterward perform certain services or do certain things in connection therewith, is plain. The plaintiff alleged that he arranged for the money to be advanced by him, and that from time to time the defendant pretended to be carrying on negotiations under the agreement, but in fact made some other arrangement by which he sought to deprive the plaintiff of his rights under the agreement, and exclude him from participation in the profits of the transaction. Section 3159 of the Civil Code declares: "If no time is specified for the commencement of the partnership, it commences immediately." In Hartman *v.* Woehr, 18 N. J. Eq. 383, it was held that a partner who is excluded from the business of the firm by illegal acts of his copartners is entitled to an account of profits, and to his share of them, until the partnership is legally dissolved. See *Lane* v. *Lodge,* ante, 93 (76 S. E. 874). On the analogous subject of joint adventures, see Jones *v.* Kinney, 146 Wis. 130 (131 N. W. 339, 24 Ann. Cas. 200, 202, and note).

3. It was argued that there was a want of mutuality in the contract, because, while it was alleged that the plaintiff agreed to advance the money necessary to make the purchase, there was no express averment that the defendant agreed and obligated himself to take the plaintiff's money and with it buy the property. In support of this contention counsel for defendant in error cited *Swindell & Co.* v. *First National Bank,* 121 Ga. 714 (49 S. E. 673) ; *McCaw Manufacturing Co.* v. *Felder,* 115 Ga. 408 (41 S. E. 664), and other similar cases. Decisions in cases of this character are not applicable to that now under consideration. In the case first cited a contract was entered into between a bank and a lumber manufacturer, whereby the bank agreed to advance to the manufacturer a certain sum of money, but the latter was not bound to take the whole or any part of the sum except at his option. It was

held that such a contract was unilateral. In the second cited case a company offered to furnish to another all the boxes of a certain character that the latter might "want" during a given period. The promisee did not bind itself to take any boxes. It was held that such a contract was unilateral. Had there been an agreement to borrow a certain sum of money, or an order of a certain number of boxes before withdrawal of either party from the agreement, a different question would have been presented. Neither of these cases involved any question of partnership or agreement for persons to unite in a common enterprise and share profits and losses. In forming a partnership there must be a mutual agreement. But in such cases, it is not necessary that each partner should in express terms state that he will accept and use the contribution to the capital stock which the other agrees to furnish, or that he will accept the services which the other agrees to render in the promotion of the partnership business. Generally, if a partnership is agreed upon, mutual acceptance of the obligations which the members respectively assume will be included or may be implied. If no articles of partnership are valid, for lack of mutuality, unless each partner in terms states that he will accept the agreements of the other, probably few of them would be binding, at least until the duty had been performed and accepted or the service had been rendered and received. Similarly, subscribers to a common enterprise rarely, if ever, state in the subscription list that each accepts the subscription of the other. Yet the promises are treated as mutual.

4. It was further urged, that the agreement was void for indefiniteness; that the plaintiff alleged that he agreed to advance the purchase-price of the property, to wit, $15,000, or such sum as might be necessary to purchase the land; and that as it did not appear definitely how much would be necessary, or that any amount would be so, the agreement was not enforceable. We do not think that this contention is sound. In the case of *McCaw Manufacturing Co.* v. *Felder*, supra, it was held that an offer to supply a manufacturer with all of the boxes of a described character "which should be rendered necessary to pack the output of the factory" of the promisee during a specified time, and an acceptance by the latter of such offer, constituted a contract which bound the promisor to furnish and the promisee to order, during the time

specified, all of the boxes necessary to pack the products manufactured by the latter's factory. We have already dealt with the subject of acceptance. That an agreement to furnish $15,000, or such amount as might be necessary to purchase a particular tract of land, is not void for indefiniteness, is determined by that decision and the citations made in it.

5. The further contention that the allegations that the defendant was to do what was necessary in endeavoring to perfect the option, to purchase the land, and to resell it to a contemplated purchaser, that the plaintiff was to render such assistance as he might be able in perfecting the transaction, and that the defendant was to conduct all negotiations for the purchase and sale of the property, were too vague and indefinite to constitute a binding contract, is not well grounded. If there were any merit in these suggestions, they would be more applicable to a special than to a general demurrer. But in fact it would be practicably impossible for persons forming a partnership for a given purpose to specify exactly everything that each should do in carrying forward that purpose. Nor can we concur in the contention that the agreement was invalid because it was not alleged that the defendant could perfect his option, but that he would endeavor to do so. It was alleged that the defendant claimed to have an option on certain property, or that he could purchase it. In the inception of a partnership the anticipation of the ability to buy property and resell it at a profit generally rests more on endeavor than on certainty.

Whether, on the trial, the evidence may show that there was in fact a partnership, or that there was no present partnership, but only one in contemplation in future, or whether there was a mere agreement to loan money, and the relation of the parties was to be that of debtor and creditor, rather than that of partners, we can not now foresee. What we hold is that the allegations of the petition are sufficient to withstand a general demurrer, and that the presiding judge erred in sustaining such demurrer.

*Judgment reversed. All the Justices concur.*