## SMITH *et al. v.* PADROSA.

1. The petition was not subject to general demurrer.
2. Nor to any of the special demurrers, except the one dealt with in the second division of the opinion.

FEBRUARY 25, 1913.

Equitable petition. Before H. F. Dunwody, judge pro hac vice. Glynn superior court. January 29, 1912.

George P. Smith and I. L. Schuyler brought an equitable action against Benito Padrosa. The original petition was demurred to generally and specially. It was amended, and other demurrers general and special were urged against it as amended, the original demurrers being also insisted upon. The substance of the petition was to the following effect: About October 3, 1905, the plaintiff Smith, "at great labor and expense and by the exercise of his experience and skill," secured from P. O. Nail "the power to sell and the option to buy" valuable growing pine and cypress timber on described lands situated in Glynn and Wayne counties, this State, at and for the price of $7,814.35, which was a low price, "and one that made the purchase of the timber highly desirable by any one desiring to build and operate a sawmill to cut same, or by any one desiring a profitable investment." Smith was entitled to receive a commission of $500 from the owner of the timber whenever he "could sell or became able to buy the same." Having no money to purchase the timber himself, Smith solicited Padrosa, who was a man of means and engaged in the lumber business, "to purchase the said timber as a joint investment for himself and the said Smith, the said Smith then and there offering to apply as a part of the payment upon said purchase-price his commission of $500, making the total cost of same to said Padrosa $7,314.35; and the said Padrosa agreed to make and did make said purchase, and paid for said timber said sum of $7,314.35, taking title thereto in his own name, and then and there held said timber as a speculative investment for the joint benefit, share and share alike in the profits, of himself and the said Smith." Thereupon Smith undertook to find a purchaser for the timber at an increased price, so that the anticipated profits for himself and Padrosa might be realized. "That while said contract and agreement was in parol, there has been complete performance of same in accordance with the terms thereof, and the same has been fully executed and consummated

as hereinafter alleged and shown." Shortly thereafter, Padrosa, being advised of the high price lumber was then bringing on the market, desired to construct a sawmill for the purpose of sawing such timber, and proposed to Smith and Schuyler that he, Padrosa, "would furnish the money with which to erect said sawmill; that the said Smith should superintend the purchase of the machinery and outfit generally for the mill, and as well its erection and operation; and that said Schuyler, who was then and there in the employ of the said Padrosa, should look after the placing of orders for said mill and other work incidental to the selling of the output; and that there should be an equal division of the profits growing out of the operation of said mill, and the sale and disposition of said timber, between the defendant Padrosa, Smith, and Schuyler. The said Smith at first demurred to the proposed division of profits, believing that he was entitled to one half of the profits of said timber, however realized; but upon the earnest expressed desire of the said Padrosa to take the said Schuyler in (he representing that the said Schuyler had served him long and faithfully, and that he wanted to let him into this venture as a reward for such service), and believing that there was a large profit in cutting said timber into lumber, the said Smith consented, and the proposal as made by the said Padrosa was then and there assented to by the said Smith and Schuyler; and the said Padrosa, Smith, and Schuyler became then and there, under the contract and agreement thus entered into, each entitled to one third of the profits and losses growing out of the purchase of said timber, whether the same should be realized by cutting the timber into lumber and selling the same, or by sale otherwise. It was then and there agreed that inasmuch as the said George P. Smith would be required to give all of his time to said sawmill and being an experienced sawmillman, he should receive a salary of $125 per month out of the proceeds of the mill, to be charged to the expense account of operating same, but that there should be no other salaries paid. It was agreed that all lumber cut was to be sold to the said Padrosa, who agreed to allow and pay to the said copartnership of Padrosa, Smith, and Schuyler the current market price therefor at the time of the delivery to him, he, the said Padrosa, being then engaged in the business of buying and selling lumber generally. It was further agreed that the said Padrosa, in his office, would keep the books showing the

receipts and disbursements of said enterprise and the state of its accounts at all times. That while said contract and agreement was in parol, there has been a complete performance of the same by the said Smith and Schuyler in accordance with the terms thereof, and the same have been fully executed by them as hereinafter alleged and shown. That in pursuance of this contract and agreement, a site for said mill was purchased at and for the sum of $100, and said sawmill was erected at a total cost to said Padrosa of $10,-273.73, and was operated from about January 1, 1906, to about the first day of October, 1906, when said mill and outfit and all of the timber remaining uncut were sold and the entire proceeds thereof paid to the said Padrosa." The approximate amounts of lumber of various kinds and the market price thereof, sawn during the operation of the sawmill, were set forth, and it was alleged that all of the output of the mill was delivered to Padrosa. It was further alleged: "That the total cost of operating said mill did not exceed the sum of $9,500, thus making a net profit of more than $5,000 in the actual operation of the mill; or, stated in different form, the mill cost $10,273.73, the cost of operating $9,500, making a total investment in the sawmill of $19,773.73. There was sold not less than $15,000 of lumber, besides slabs, seconds, and refuse, leaving a balance of not less than $4,773.73 remaining unpaid on the cost of the mill at the time the mill and the timber were all sold, aside from the $500 due the said Smith on the original cost of the timber." On September 21, 1906, the sawmill and all of the timber remaining uncut were sold by Padrosa to named purchasers for a price of $26,000, all of which, less the selling agent's commission of $1,625, was received by Padrosa and all applied to his own use, although he promised to make an accounting therefor to Smith and Schuyler at the time of the sale, by reason of which promise they assented that the sale should be made. He has, however, failed and refused to comply with such promise.

The petition charged, that in an accounting and settlement with the plaintiffs by defendant, he should be charged with the amount received by him from the sale of the sawmill and uncut timber, and for the price of the lumber of all description delivered to him, and that he should be credited with the amounts he paid for the timber and for the sawmill outfit, and the expense of

operating the mill; that the plaintiff Smith should be paid the sum which he contributed by way of his commissions in the purchase of the timber; and that the profits of the enterprise should be distributed share and share alike to Smith, Schuyler, and Padrosa. The prayers were, for an accounting and settlement of the affairs of the partnership, and that the defendant be required to produce in court the books and papers of every character tending to show "the state of the accounts and receipts and disbursements of said partnership business," and that upon such accounting and settlement each of the plaintiffs recover from the defendant the sum to which they are entitled. The demurrers were sustained, and the case dismissed. To this ruling the plaintiffs excepted.

*Brantley & Butts,* for plaintiffs.

*D. W. Krauss* and *Bennet, Twitty & Reese,* for defendant.

FISH, C. J. (After stating the foregoing facts.)

1. Taking the allegations of the petition to be true, a partnership existed composed of the plaintiffs and the defendant for the operation of a sawmill business. *Floyd* v. *Kicklighter,* 139 *Ga.* 133 (76 S. E. 1011). The assets of the partnership, according to the allegations, consisted not only of the output of the mill, but of the mill itself in its entirety and the timber originally conveyed to the defendant by Nail. The contract of partnership was not required to be in writing, although standing timber, which is realty, was to become a part of its assets to be used in the operation of the partnership business. *Lane* v. *Lodge,* 139 *Ga.* 93 (76 S. E. 874). Nor did the allegations of the petition show that the partnership agreement was without consideration as to the plaintiff Schuyler. While the whole output of the mill was to be purchased by the defendant, Schuyler was to take all orders for lumber and to discharge all duties incident to taking them; and it does not follow, merely because the defendant was to purchase the whole output of the mill, that Schuyler was left with nothing to do in reference to such orders as the defendant might give for lumber. It may fairly be assumed that the defendant would desire different kinds and amounts of lumber during the operation of the mill; and according to the petition it was Schuyler's duty to take all orders and to discharge all duties incident to filling the same.

2. The allegation of the petition in reference to the original agreement between the plaintiff Smith and the defendant, relating

to the purchase of the timber from Nail, that the defendant after taking to himself a conveyance of the timber "held said timber as a speculative investment for the joint benefit, share and share alike in the profits, of himself and the said Smith," was a mere conclusion of the pleader and unauthorized by the terms of the contract as set forth in the petition. The special demurrer to this allegation was properly sustained. The other grounds of special demurrer were not meritorious.

The court erred in sustaining the demurrers and in dismissing the petition. *Judgment reversed. All the Justices concur.*