MORGAN *et al. v.* COOPER.

No. 8687.  SEPTEMBER 14, 1932.

*Smith, Hammond, Smith & Bloodworth,* for plaintiffs in error. *Marion Williamson* and *E. Harold Sheats,* contra.

ATKINSON, J.  "A partnership may be created either by written or parol contract, or it may arise from a joint ownership, use, and enjoyment of the profits of undivided property, real or personal." Civil Code, § 3155.  "As among partners, the extent of the partnership is determined by the contract and their several interests.  As

to third persons, all are liable, not only to the extent of their interest in the partnership property, but also to the whole extent of their separate property." § 3156. "A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in profits alone does not." § 3158. These sections were considered in *Floyd* v. *Kicklighter*, 139 *Ga.* 133, 141 (76 S. E. 1011), a case involving whether, under the terms of the contract in question, a partnership was created as between the parties themselves. After an elaborate discussion, it was said: "We think the allegations of the petition are sufficient to show at least prima facie the creation of a partnership, and to withstand a general demurrer. They show a joint enterprise, a joint risk, a joint sharing of expenses, and a joint interest in profits and losses. They do not show that the plaintiff was to lend the money to Kicklighter, or that it was to be repaid to the plaintiff at all events, or that any note or security was to be given to him beyond the agreement that he was to be repaid from the proceeds arising from a sale of the land. It does not appear that the advance was to Kicklighter alone, but rather to both Kicklighter and Floyd, and the interest was to be charged on their joint account." The contract involved in the instant case is as follows:

"Memo Agreement between the Block Candy Company (Brooks Morgan), Party of the First Part, and Harry Cooper, Party of the Second Part. Said Cooper being desirous of having the Block Candy Company put into effect a plan to distribute Candy to Schools and Churches, it is agreed as follows:

"A Company or Partnership, to the [be?] styled 'The Cooper Company' with office at 516 Means St., N. W., will be organized. The party of the First Part to have control of the Company and the name—'The Cooper Company,' or similar name, for three years from the date of this agreement. In the event Cooper leaves the 'Cooper Company' herein referred to, he shall have the right to use for a similar Company the name—The Harry Cooper Corporation, the Cooper Candy Corporation or the Cooper Supply Company.

"Territory—For the present the Party of the Second Part is to have exclusively the special class of business referred to, in the States of South Carolina, North Carolina, Tennessee, Virginia, and Louisiana. The Cooper Company shall have the right to sell in the

States of Georgia and Florida the Cooper line of candies and to each customer one number of the Block line; provided the said Cooper will permit the Block Company to pay to C. B. Wells one half of the nest [net?] profit left for the Cooper Company on the candy business in the two States, left for Cooper on the candy. Payment to be made as near the close of the season as it is found practicable to prepare a statement. It is understood that Wells is to have no interest in any profits of the Cooper Company except on Candy.

"The Party of the First part will provide the necessary candy, special labels, special boxes, containers, etc., letter-heads, order-blanks, envelopes, circulars, etc., candies to be provided 6 kinds to a box of 24 assortments to be mutually agreed upon. Case packing— (Whole case, 60 boxes) whole-case orders to be filled with 2-one half cases—1/4 cases 16 boxes.

"Price to schools, churches, etc., 80¢ or 85¢, delivered by parcel post, express or freight, as the urgency may require. The Cooper Company is also to have the privilege of selling in its exclusive territory specified, regular Block numbers for 80¢ or 85¢, Cooper to pay 60¢ net, F. O. B. Atlanta, for Block numbers and from 52-1/2¢ to 56¢ net, Atlanta, for special or Cooper numbers. Price to be named when necessary Factory cost runs have been made.

"The Party of the Second Part is to pay, through the Party of the First part: All freight, express and postage. For the necessary premiums or prizes. Expenses and commissions of salesmen. For any special advertising or premiums, not referred to above.

"The party of the Second part is to receive from the party of the first part the difference between the amount for which the candy is collected and the Sales expense, above enumerated, after deduction is made to cover credit and other losses over and above one per cent.

"All administration and detail, relating to Sales, shipping, credits, collections, and correspondence, will be paid for and handled by the party of the First Part. Credits, collections etc. will be exclusively under the control of the party of the first part, but the said Cooper and salesmen working under his direction shall co-operate in the handling of credits and collections, as outlined by Block.

"Block will pay for Cooper to his salesmen, for sales made, on the following basis. Per case 12-1/2 per cent., payable as follows: $4.00 per case weekly after shipment made. $1.50 per case when shipment paid for—85¢ to be held as a reserve to take care of un-

foreseen losses on other accounts. Last amount payable at the close of the Season.

"Cooper, under the direction of the Block Company, is to give all of his time during the school season to the sale and promotion of this plan and is incident thereto, to draw on his own sales the same amount paid to his salesmen. He is to draw as near the 10th of the month as practicable, following the sales, 80% of the net earnings of the Cooper Company. The balance of the net earnings to be paid to Cooper at the close of the season.

"Salesmen for the Cooper Company are to be selected by Cooper, but must work under the Block Company Bond.

"Playground equipment and premiums to be ordered and paid for by the Block Company, for the Cooper Company, after sufficient Candy has been sold and paid for, and the necessary money remitted to pay for same. Net profits to be paid to the Cooper Company.

"While the purpose of the Memo is to establish and perpetuate the above-outlined plan of sales indefinitely, either party shall have the right to withdraw from the arrangement on thirty days notice. The Block Company shall have the right to cancel on one week's notice, for cause, or if the terms and intents of this agreement are not complied with.

"Cooper Company                          The Block Candy Co.
    "Harry Cooper.                              W. E. White."

The substance of the terms of this contract is that Block was proprietor of the enterprise; that the parties contemplated sale of Block's goods under a trade-name carrying the surname "Cooper;" that Block should furnish all the capital necessary to carry on the enterprise, for which he should reimburse himself from sales of the goods; that he should bear all loss; that Cooper should share no loss; that Cooper should only render personal service for which he should receive all the net profits. Though it was stated: "It is agreed . . a company or partnership . . will be organized," such statement will not constitute a partnership, where the things provided to be done by the respective parties do not in law constitute a copartnership. *Floyd* v. *Kicklighter*, supra. The contract now in question does not provide for the creation of a copartnership.

The rulings announced in headnotes 2 to 8, inclusive, do not require elaboration.

*Judgment affirmed in part and reversed in part. All the Justices concur.*