24725. BONE *v.* FAIRCLOTH.

DECIDED OCTOBER 22, 1935.

*Heath & Heath,* for plaintiff in error.

*E. L. Grantham,* contra.

GUERRY, J. This was a suit by W. A. Faircloth, as sole surviving partner of the firm of Wall & Faircloth, against W. H. Bone Jr., on eleven promissory notes, executed by Bone, in the total sum of $523.25. The notes were payable to "Wall & Faircloth." The petition, as amended, set out that the partnership of Wall & Faircloth was formed a number of years prior to the execution of the notes sued on, and was composed of J. L. Wall and W. A. Faircloth, and that they owned both real estate and personal property and were engaged in the sawmill business, including the cutting of timber and manufacturing it into lumber, and cutting the timber in connection with the business of Wall & Faircloth from their land; that the notes sued on were given to Wall & Faircloth as part of a series given for the purchase-price of lots of land 213 and 214 in the 6th land district of Coffee County, Georgia, each lot containing 490 acres, more or less; that Wall & Faircloth, J. L. Wall, and W. A. Faircloth executed to the defendant a bond for title to said lands simultaneously with the execution of the notes; that after the execution of the notes J. L. Wall died, and W. A. Faircloth, the plaintiff, as sole surviving partner, was undertaking to collect the notes sued on, for the purpose of distributing the pro-

ceeds among the partners and the estate of the deceased partner, J. L. Wall; that the required notice of suit was given to the defendant in order to bind him for attorney's fees according to the valid terms of the notes. Prayer was for "a special lien against the lands described" and for "judgment for the several amounts sued for."

1. The plaintiff in error contends that a partnership was neither alleged nor proved, and therefore that no right was shown in the defendant in error to maintain the action as surviving partner. With this we can not agree. Taking the allegations of the petition as true, a partnership existed between W. A. Faircloth and J. L. Wall for the operation of a sawmill business. See *Floyd* v. *Kicklighter*, 139 *Ga.* 133 (76 S. E. 1011). The contract of partnership was not required to be in writing (Code of 1933, § 75-101; *Mann* v. *Bowen*, 85 *Ga.* 616, 11 S. E. 862); and this is true, although land with the timber thereon was to become a part of its assets to be used in the operation of the sawmill business. See *Smith* v. *Padrosa*, 139 *Ga.* 484 (77 S. E. 639); *Manget* v. *Carlton*, 34 *Ga. App.* 556 (130 S. E. 604); *Lane* v. *Lodge*, 139 *Ga.* 93 (76 S. E. 874). It not being necessary that the contract of partnership be in writing, it follows that it was not necessary that a written contract of partnership be attached to the petition; nor was it necessary, especially in the absence of a special demurrer, that the petition set out the actual terms and conditions of the parties in the business. The plaintiff testified: "I am a member of the partnership of Wall & Faircloth, which partnership was composed of J. L. Wall and W. A. Faircloth. I am the sole surviving partner. We started the partnership in 1920 or 1921. To begin with, the partnership borrowed $4000 and put it in the business. Out of this money we bought lot of land No. 214 in the 6th district of Coffee County, Georgia, containing 490 acres, more or less. This lot of land had sawmill timber on it. We entered the sawmill business. We bought and owned a sawmill, an outfit, oxen, timber-carts, and other personal property. . . The partnership of Wall & Faircloth ran the business and what we made was to be ours." The testimony of an alleged partner is competent to prove the partnership. *Abel* v. *Jarratt*, 100 *Ga.* 732 (28 S. E. 453); *Davidson* v. *Waxelbaum*, 2 *Ga. App.* 432 (58 S. E. 687). This testimony shows the existence of a partnership, or, at

least, that there was an intention on the part of the plaintiff and J. L. Wall to enter into a partnership. See *Huggins* v. *Huggins,* 117 *Ga.* 151 (43 S. E. 759). Furthermore, the testimony, reasonably construed, shows that W. A. Faircloth and J. L. Wall jointly entered into the sawmill business; that there was a joint risk, a joint sharing of expenses, and a joint interest in the profits and losses. *Smith* v. *Hancock,* 163 *Ga.* 222 (136 S. E. 52). Certainly it discloses a joint interest in the profits of the business; for the plaintiff testified that "what we made was to be *ours.*" Therefore there was sufficient proof of a partnership. See *Wester* v. *Everett,* 149 *Ga.* 754 (102 S. E. 159); *Corbin* v. *Collum,* 173 *Ga.* 681 (160 S. E. 771), and cit.

2. The defendant further contends that it was necessary that the personal representative of the deceased partner be made a party plaintiff, in view of the testimony of the surviving partner that at the time of the institution of the suit there were no partnership debts. The Code of 1933, § 75-208, provides: "The surviving partner, in case of death, has the right to control the assets of the firm to the exclusion of the legal representatives of the deceased partner, and he is primarily liable to the creditors of the firm for their debts." Section 75-209 provides: "Title to personal property vests in the surviving partners, who have the right to dispose thereof for paying the debts and making distribution." It is insisted that the control of the assets by the surviving partner must be *both* for the purpose of "paying debts" and "making distribution;" and that where there are no debts, the surviving partner has no right to sue on a chose in action of the partnership, without making the personal representative of the deceased partner a party. With this contention we are unable to agree. The surviving partner or partners of a partnership stand in relation to the partnership somewhat in the same position as an administrator does to his intestate's estate. The surviving partner is a trustee for the share of the deceased partner's interest, after the payment of all debts. A debtor of a partnership may pay the amount he is due to the surviving partner or partners, and be absolved from any further claim by the partnership or any of its members, dead or alive. As was said in *Cook* v. *Cochran,* 42 *Ga. App.* 478 (156 S. E. 465), "For the purpose of winding up the affairs of a partnership consisting of two members, one of whom dies, the surviving

partner, being primarily liable to the creditors of the partnership, has the right to control the assets belonging to the firm, to the exclusion of the legal representative of the deceased partner; and until the interest of the deceased partner in the partnership assets is ascertained and his portion is turned over to his representative, the latter can maintain no suit for the recovery of the joint effects. Civil Code (1910), § 3176; *City of Atlanta* v. *Dooly,* 74 *Ga.* 702, 709; *Louisville & Nashville R. Co.* v. *Morse,* 143 *Ga.* 110 (84 S. E. 428). Accordingly, the administrator of the deceased partner was properly omitted as a party plaintiff in the present suit. . . Although the cause of action was predicated upon a note given for the purchase-price of land, the title to which, upon payment of the note or a satisfaction of the judgment based thereon, would have to be made to the defendant purchaser both by the surviving partner and the personal representative (or the heirs at law, Civil Code of 1910, § 3178) of the deceased partner, this fact would not require that the administrator of such deceased partner should be joined as a party plaintiff. The defendant, upon payment of the debt, will have his remedy to compel conveyance by the administrator or the heirs at law of the deceased partner. Civil Code (1910), §§ 3178, 4016, 6037; *Bank of Southwestern Georgia* v. *McGarrah,* 120 *Ga.* 944 (3) (48 S. E. 393) ; *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604 (123 S. E. 883, 37 A. L. R. 378)." It is requested that we certify this case to the Supreme Court, asking that the *Cook* case be reviewed and overruled. We are firmly of the opinion, as shown by what we have already said, that the *Cook* case is based on sound and well-established legal principles; and the request is therefore denied. It is further insisted that the rule as above announced deprives heirs of the deceased partner of the protection of a bond, as required of an administrator. While we do not think the defendant is the proper person to raise this contention; where the suit is against him and presumptively brought for the ultimate benefit of the heirs (for the heirs could well protect themselves in a court of equity), yet it may be said that each partner, while living, entrusts the other with the same authority, and that even in death such authority is often given by will to an executor without the exaction of a bond for its faithful execution. Let the defendant pay the amount of the judgment and ask for conveyance of title, and the controversy will be at an end.

3. If the note sued on was given as the purchase-price of land, the judgment obtained thereon carries the lien against the land, whether declared so in the judgment or not. "The only effect that such special lien written into the judgment and execution has is that it gives information to all persons that the judgment carries with it the additional strength of the lien securing the note which is the basis of the suit in which judgment is entered. . . The lien of such judgment is present whether it is specially declared or not." *Alley* v. *First National Bank of Gainesville,* 46 *Ga. App.* 527 (168 S. E. 317). The special lien is but historical and declaratory of an existing right or lien. It will dispense with the necessity of aliunde proof to show that the note, the basis of the suit, was so secured.

4. In a suit on a note where the jury returns a verdict in favor of the plaintiff against the defendant, not specifying the amount found, it is not error for the judge to send the jury back with instructions to specify the amount found to be due; and this is true although the first verdict rendered might be legal and valid as amounting to a finding of the amount sued for in plaintiff's petition. No harm is done by making the verdict specific. The verdict received and published by the court, and on which judgment was entered, was a valid verdict. From what has been said it follows that the trial court did not err in overruling the demurrers; and none of the special grounds of the motion for new trial have any merit. The evidence supported the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*