**In the Matter of Gary Lee WOOLSTON and Elizabeth Annette Woolston, Debtors.**

**Ernest V. HARRIS, Trustee, Plaintiff,**

**v.**

**Leon ESCOE, Brenda S. Escoe, and Kenneth Boss, Defendants.**

Bankruptcy No. 90–30450.
Adv. No. 91–3031.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Nov. 6, 1992.

Ernest V. Harris, Macon, Ga., for plaintiff.

William C. Bushnell, Athens, Ga., for defendants.

MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Ernest V. Harris, Chapter 7 Trustee, Plaintiff, filed a "Complaint to Obtain Approval for the Sale of the Interest of the Estate and Co–Owners in Real Property" on July 12, 1991. Leon Escoe, Brenda S. Escoe, and Kenneth Boss, Defendants, filed their answer on September 23, 1991.[1]

1. This Court entered an order on August 22, 1991, extending the time for Mr. Escoe and Mrs.

By order of this Court entered on December 19, 1991, Plaintiff was allowed to amend his complaint. A trial was held on September 18, 1992. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Gary Lee Woolston, Debtor, operated a business known as Woolston Manufactured Homes. His business was selling mobile homes to consumers. Mr. Escoe contacted Debtor about purchasing and developing certain real property as a mobile home park. Mr. Boss and John Brewer also wanted to participate in the purchase and development. The real property was owned by Thomas Billings and Patricia Billings ("the Billings").

Mr. Escoe was the only purchaser able to attend the closing. The Billings conveyed the real property to Mr. Escoe by warranty deed dated August 24, 1987. Mr. Escoe and Debtor are shown as the purchasers on the closing statement. The purchase price was $131,700. Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor each paid $7,000 to the Billings. The Brand Banking Company made a loan to Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor for the balance of the purchase price. Mr. Escoe conveyed a three-fourth interest in the real property to Mr. Boss, Mr. Brewer, and Debtor by warranty deeds dated August 25, 1987. Thus, Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor each owned a one-fourth interest.

Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor refinanced the real property by obtaining a loan from the First National Bank of Walton County in December of 1987. The settlement statement shows Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor as the borrowers. The real property at issue was pledged as security for the loan.

Mr. Escoe, Mr. Boss, Mr. Brewer, and Debtor formed a partnership known as Rainbow Park Properties. The partners met on December 7, 1987, to discuss devel-opment of the real property into a mobile home park. They agreed to share the profits equally and make equal contributions to develop the mobile home park. There was no written partnership agreement, partnership tax returns were not filed, and a federal tax identification number was not obtained. One or more bank accounts were opened in the name of Rainbow Park Properties.

Mr. Brewer conveyed his interest in the mobile home park to Mr. Escoe, Mr. Boss, and Debtor by a warranty deed dated August 18, 1988. Mr. Escoe conveyed one-half of his interest in the mobile home park to his wife, Brenda Escoe, on August 18, 1988. Mr. Escoe testified that he conveyed this interest to his wife "in case something happened to me." Thus, Mr. Boss and Debtor each owned a one-third interest and Mr. Escoe and Mrs. Escoe each owned a one-sixth interest. Mrs. Escoe became a partner of Rainbow Park Properties in August of 1988.

On August 18, 1988, Mr. Escoe, Mrs. Escoe, Mr. Boss, and Debtor, as individuals, executed a deed to secure debt in favor of the First National Bank of Atlanta. This loan was another refinancing of the mobile home park. The mobile home park was pledged as security for the loan.

Debtor sold mobile homes through his business and set them up in the mobile home park. Debtor was responsible for managing the mobile home park. He showed lots to prospective tenants and collected rent. He kept the books and paid some of the bills of the mobile home park.

Mr. Escoe oversaw development of the mobile home park. He was paid to install ten or twelve septic tanks and to cut grass. Each partner paid for certain improvements at the mobile home park from his or her personal funds.

Debtor was "ousted" as manager of the mobile home park in late 1989. Debtor had written a check for $3,500 on the Rainbow Park bank account for the mortgage pay-

Escoe to file a timely answer. The Court entered an order dated October 22, 1991, allowing

Mr. Boss's answer.

ment. This check "bounced." The mortgage holder called Mr. Escoe. All partners attended a meeting at Mr. Escoe's office and went over the books with Debtor. Debtor continued to handle the books for about one month, until the partnership was unable to pay the interest on a loan. Mr. Escoe and Mrs. Escoe went to the bank and closed the partnership account. They opened another partnership account. Debtor testified that he took for granted that he no longer managed the mobile home park when Mr. Escoe and Mrs. Escoe took the checkbook from him.

Debtor refused to turn over the partnership records to Mr. Escoe and Mrs. Escoe. He testified that they refused to accept copies of records that he offered. An attorney was hired to write a letter to Debtor, demanding the records. Mr. Escoe and Mrs. Escoe accused Debtor of wrongful acts concerning the mobile home park and the partnership bank account. Debtor denies the accusations. He admits that he received payments from customers of his business for air-conditioning units that he failed to deliver. He testified that he used the payments to pay his creditors.

When Debtor was ousted as manager of the mobile home park, nineteen lots were being leased for $150 each. Monthly expenses were $3,900. The partners used their personal funds to make up the $1,000 shortfall. Currently, the park has forty-seven lots that are leased and is making some profit.

Mr. Escoe and Mrs. Escoe began managing the mobile home park after Debtor was ousted. They reside in the park in a mobile home that is owned by their daughter. They do not pay rent for their mobile home space. They have not drawn any salary for their services. Mr. Escoe, Mrs. Escoe, and Mr. Boss continued to make contributions after Debtor was ousted. The mobile home park is worth considerably more as a whole. It cannot be easily divided into separate parcels. It is not practical to partition the mobile home park.

Debtor testified that he owns, as an individual, a one-third interest in the mobile

home park. Debtor has failed to make certain contributions for development and expenses of the mobile home park.

The current balance on the mortgage is $230,000. The payments are current. Debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 14, 1990. Plaintiff is the trustee of Debtor's bankruptcy estate.

## CONCLUSIONS OF LAW

Plaintiff contends that Debtor owned a one-third interest in the mobile home park when the bankruptcy case was filed. Plaintiff contends that the partners owned the mobile home park as tenants in common. Plaintiff wants to sell the mobile home park under section 363(h) of the Bankruptcy Code,[2] which provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C.A. § 363(h) (West 1979 & Supp. 1992).

2. 11 U.S.C.A. § 363(h) (West 1979 & Supp.1992).

In the alternative, Plaintiff contends that Debtor had certain property rights as a member of the partnership.[3]

Defendants contend that the mobile home park was owned by the partnership and not by the partners as individuals. Defendants contend that Debtor's interest in the partnership was terminated when he was ousted in 1989.

In 1984, the Georgia Legislature adopted a version of the Uniform Partnership Act. The new statute completely superseded the prior partnership statute and became effective April 1, 1985. Larry E. Ribstein, *An Analysis of Georgia's New Partnership Law*, 36 Mercer L.Rev. 443, 443–44 and 448 (1985). Georgia cases decided prior to April 1, 1985, must be considered with caution.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." O.C.G.A. § 14–8–6(a) (1989).

"The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business...." O.C.G.A. § 14–8–7(4) (1989).

"In Georgia, the issue of partnership 'is generally a mixed question of law and fact, and cannot be resolved as a matter of law *unless the verdict one way or the other is demanded by the evidence.*'" *Flatau v. Tribble's Shoes, Inc. (In re Lawrence)*, 82 B.R. 157, 161 (Bankr.M.D.Ga.1988) (emphasis in original).

■ The court is persuaded that Debtor, Mr. Escoe, Mrs. Escoe and Mr. Boss were partners. They agreed to make equal contributions. They agreed to share the profits of the mobile home park. They met to discuss development and the business affairs of the mobile home park.

■ The Court now turns to the question of whether the partners owned the mobile home park as tenants in common or as tenants in partnership.

Section 14–8–25(a) of the Georgia Code[4] provides: "(a) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership."

There was no comparable Georgia Code provision prior to the adoption of Georgia's version of the Uniform Partnership Act. *See Comment* to O.C.G.A. § 14–8–25(a) (1989); Ribstein, 36 Mercer L.Rev. at 463. ("Under prior Georgia law, although a deed could convey property to the partnership in the names of the individual partners, a partnership was considered merely an aggregate of the individual partners and, therefore, could not hold title. Thus, partners held title to partnership property individually.")

Section 14–8–8 of the Georgia Code[5] provides, in relevant part:

(a) Subject to subsection (d) of this Code section, property, whether real or personal, is presumed to be partnership property where:

   (1) It is included as such in the agreement of partnership or described in any recorded statement of partnership under Code Section 14–8–10.1; or

   (2) It is acquired in the partnership name.

(b) Subject to subsection (d) of this Code section, property is presumed to be partnership property if it is purchased with partnership funds even though the title or other interest is acquired in the name of an individual partner or partners.

(c) Subject to paragraph (1) of subsection (a) and subsection (d) of this Code section, where property is acquired in the name of an individual partner or partners without use of partnership funds the property shall be presumed to be the separate property of that individual part-

---

**3.** *See* O.C.G.A. § 14–8–24 (1989). This section provides:

   The property rights of a partner are:
   (1) His rights in specific partnership property;
   (2) His interest in the partnership; and
   (3) His right to participate in the management.
   O.C.G.A. § 14–8–24 (1989).

**4.** O.C.G.A. § 14–8–25(a) (1989).

**5.** O.C.G.A. § 14–8–8 (1989).

ner or partners even though the property was used for partnership purposes.

(d) Real property and other property held of public record otherwise than in the partnership name, the ownership of which is customarily publicly recorded, shall not be deemed to be partnership property to the prejudice of a person who is not a partner and who did not have actual knowledge to the contrary.

O.C.G.A. § 14–8–8(a), (b), (c), and (d) (1989).

The mobile home park was acquired in the names of the individual partners without use of partnership funds. There was no "recorded statement of partnership" or written partnership agreement. Under subsection (c), the mobile home park is presumed to be the separate property of the individual partners even though it was used for partnership purposes. Neither Plaintiff nor Defendants cite any case authority concerning what must be shown to overcome this presumption. The Court has considered several cases from other jurisdictions.

Subsections (a), (b), and (c) of Georgia Code section 14–8–8 are modeled on the Alabama version of the Uniform Partnership Act. *See Comment* to O.C.G.A. § 14–8–8 (1989).

In *Reed v. Crow*,[6] Reed and Crow were equal partners in an architectural firm that dissolved. Crow exchanged architectural services of the partnership as partial consideration toward the purchase of two office condominiums. Title to the condominiums was in Crow's name. Reed contended that the condominiums were partnership property. Alabama law,[7] like Georgia law,[8] provides that property is presumed to be partnership property if purchased with partnership funds even though title is acquired in the name of an individual partner.

The Alabama Supreme Court stated:

Hence, the question is one of intention: whether or not the facts and circumstances indicate that the personalty ac-

quired with firm funds was intended to become partnership property.

496 So.2d at 17 (quoting *Burgess Mining & Construction Corp. v. Lees*, 440 So.2d 321, 330 (Ala.1983).

The Alabama Supreme Court continued, stating:

Although *Burgess* involved personal property, § 10–8–70 applies equally to personalty and to realty. Here, as was the case with regard to mining equipment in *Burgess*, resolution of the issue turns on the intention of the parties at the time of the purchase, not merely the use of partnership services as partial payment.

496 So.2d at 17–18.

In *Price v. McFee*,[9] the Maryland Court of Appeals stated:

The criterion for determining whether property held in the name of one partner is to be considered as partnership property is the intention of the partners to devote it to partnership purposes at the time the property was acquired, as shown by the facts and circumstances surrounding the transaction of purchase considered in connection with the conduct of the parties toward the property after the purchase.

77 A.2d at 13.

In *In re Urban Development Company and Assoc.*,[10] the district court for Maryland stated:

According to Maryland law, controlling here, property recorded in the name of individual partners can clearly be partnership property, in which case the individuals hold the property in a resulting trust for the benefit of the partnership. The key to whether property not held in the partnership name is partnership property is "the intention of the parties to devote it to partnership purposes." Among the inquiries relevant to a determination of "the intention of the parties" are: how the ownership is treated in the

---

6. 496 So.2d 15 (Ala.1986).

7. Ala.Code § 10–8–70(b) (1987).

8. O.C.G.A. § 14–8–8(b) (1989).

9. 196 Md. 443, 77 A.2d 11 (1950).

10. 452 F.Supp. 902 (D.Md.1978).

partnership agreement, who claims an interest in the property on the relevant tax returns and books[,] who paid for the property[,] and who bore the expenses attributable to its maintenance[.]

452 F.Supp. at 905.

In *Darby v. United States,* [11] the district court for the Southern District of Georgia stated:

Whether property, owned by a partner prior to the formation of the partnership, becomes a partnership asset is a question of the parties' intent. 45 A.L.R.2d 1012. *See also Estate of Reeve v. Commissioner,* T.C. Memo (1962) ¶ 62.115. Under Georgia law, real property can be contributed as an asset to a partnership by oral agreement. *See Smith v. Padrosa,* 139 Ga. 484, 77 S.E. 639 (1913) and *Lane v. Lodge,* 139 Ga. 93, 76 S.E. 874 (1912). Each partner then holds an equitable interest in the assets, regardless of who holds legal title. *See Roach v. Roach,* 143 Ga. 486, 85 S.E. 703 (1915) and *Purvis v. Johnson,* 163 Ga. 698, 137 S.E. 50 (1926).

Whether such an agreement existed here is a question of fact. It is for a jury to determine whether [the party] contributed this property as a partnership asset or whether he merely contributed the use of it.

496 F.Supp. at 945.

In the case at bar, Debtor, Mr. Escoe, Mr. Boss, and Mr. Brewer used their personal funds for the down payment, which they paid to the Billings. The day after the closing, Mr. Escoe conveyed a three-fourth interest in the real property to his partners, as individuals, rather than to the partnership. All loans and deeds to secure debt were in the names of the partners as individuals. Title to the property was never conveyed to the partnership.

11. 496 F.Supp. 943 (S.D.Ga.1980).

Debtor believed that he, as an individual, owned an interest in the mobile home park. Mr. Escoe conveyed one-half of his interest in the mobile home park to his wife "in case something happened to [him]." The Court is persuaded that Mr. Escoe and Mrs. Escoe believed that they owned, as individuals, an interest in the mobile home park. The partners used their personal funds to make improvements to the mobile home park. The Court recognizes that development of the mobile home park was the sole business of the partnership. The Court is not persuaded that Defendants have overcome the presumption that the mobile home park was the separate property of the individual partners.

The Court therefore concludes that Debtor's bankruptcy estate owns an undivided one-third interest in the mobile home park. The Court is persuaded that partition of the property is not practical and that the property is worth significantly more as a whole than as separate tracts. The mobile home park is business property even though Mr. Escoe and Mrs. Escoe reside in and manage the mobile home park. The Court is persuaded that the benefit to the bankruptcy estate of a sale outweighs the detriment to the co-owners. The Court is persuaded that Plaintiff may sell the mobile home park under section 363(h).

The evidence presented shows that Debtor failed to make certain contributions to the mobile home park. Defendants would be entitled to credit for the contributions made by them on behalf of Debtor.